ANNA LATIMER et vir, Respondents, v. METROPOL-
ITAN STREET RAILWAY COMPANY, Appel-
lant.

**Kansas City Court of Appeals, June 24, 1907.**

1. **PASSENGER CARRIERS: Sudden Stoppage: Petition: Instruc-
tion.** A petition by a passenger against a street railway com-
pany for injury occasioned by operating its street car at a rapid
rate of speed and suddenly and without warning stopping the
same, so as to cause violent and sudden shock to the passen-
gers, sufficiently states a cause of action for negligence; and
an instruction to like effect is properly given.

2. **DAMAGES: Personal Injury: Evidence: Domestic Environ-
ment: Married Woman.** Evidence as to the domestic surround-
ings of an injured party introduced to create sympathy and
enhance the verdict should be refused; but where the evidence
tends to show that the ability of a married woman to perform
the wifely and motherly duties of her household has been di-
minished, it is admissible, though the recovery for mere loss of
time from household services belongs to the husband.

3. ————: ————: ————: **Materiality: Objection.** Plaintiff offer-
ed evidence to show the number of her children. The defend-
ant objected because it was immaterial. *Held*, the objection
was insufficient.

4. **TRIAL AND APPELLATE PRACTICE: Conduct of Counsel:
Objection: Bill of Exceptions.** Where no exceptions are saved
at the time to the alleged improper remarks of counsel to the
jury it cannot be reached later by affidavits inserted into the
bill of exceptions proper, so as to be reviewed on appeal.

5. **DAMAGES: Personal Injury: Evidence: Excessive Verdict.**
A verdict for $4,500 held on the evidence, not excessive.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover*, Judge.

AFFIRMED.

*John H. Lucas* and *Frank G. Johnson* for appel-
lant.

(1) The petition was too general in its allegations
of negligence. · (2) The trial court erred in permitting

plaintiffs to prove the number and ages of their children, the nature and extent of Mrs. Latimer's labors in the household prior to the accident and her inability thereafter to perform such labors. Stephens v. Railroad, 96 Mo. 214; Dayrash v. Railroad, 103 Mo. 577; Mahaney v. Railroad, 108 Mo. 200; Williams v. Railroad, 123 Mo. 573; Brown v. Railroad, 23 Mo. App. —; 15 Encyc. of Law, 861. (3) The court erred in instructing the jury in plaintiff's instruction number 1, that if the stop of the train in evidence was "an occurrence not usually happening in the operation of defendant's trains on said line of street railway," the presumption was that such stop was caused by defendant's negligence. Bartley v. Railway, 148 Mo. 140; Pryor v. Railway, 85 Mo. App. 379. (4) General Boyle's remarks were improper and prejudicial. (5) The amount of the verdict was grossly excessive.

*Boyle, Guthrie & Smith* for respondent.

(1) It has been held by the Supreme Court that the bringing of a cable train to a sudden stop creates a presumption of negligence. Logan v. Metropolitan, 183 Mo. 589; Redmon v. Railway, 185 Mo. 10; Minster v. Railway, 53 Mo. App. 285. (2) Appellant contends that the plaintiff's first instruction was erroneous. This instruction was proper. (3) Defendant's fourth contention is as groundless as the others, and, like the second, it is subject to the vice of being a misstatement of the record. (4) Defendant's statement of the facts on which it founds its claim that the verdict in this cause was excessive, is as unfair as its other contentions.

BROADDUS, P. J.—The plaintiff, Anna Latimer, sues to recover damages for an injury she received while a passenger on one of defendant's street cars, alleged to have been the result of defendant's negligence. Her husband, Frank Latimer, is merely joined as a nominal

party. The cause of action alleged in the petition in substance is, that while plaintiff Anna was a passenger and while the car was moving at a rate of speed of six miles an hour, it was, through the negligence of defendant, and without warning, suddenly stopped, so as to cause a violent and sudden shock by reason of which the plaintiff Anna was suddenly and violently thrown against parts of the car and upon the ground and severely injured.

As the parties do not differ materially in their statements as to the main facts in the case, we have adopted a part of that of plaintiff as a matter of convenience: "On December 28, 1904, the defendant Metropolitan Street Railway Company was operating a cable street railway line on Twelfth street in Kansas City, Missouri. The line runs through the business district on the west and through a residence district on the east. On the downtown or western end of the line the trains are operated by a cable running about seven miles an hour. On the residence or eastern end of the line the trains are operated by a cable running about nine miles an hour. The cables which move these trains run through a conduit below the surface of the ground. The grip runs along in this conduit and the trains are started or stopped by catching or releasing of the hold of the grip on the cable. The division point where these cables enter into and out of the powerhouse is at Twelfth and Charlotte streets. As the eastbound cable train reaches a point near the power house the gripman releases the west cable and permits his train to run by gravity until it reaches a point where he can take hold of the east end cable. If the gripman should negligently fail to release his grip and let go of the cable, and if there were no contrivance to prevent it, the grip would follow the cable until it came in contact with another cable which would result in the sudden stopping of the train and the cutting of such other cable. In order to prevent a

part of this double catastrophe a device called a dead-man (being a piece of oak timber about three and a half feet long) is placed below the surface of the ground at a point where it will stop the train before it strikes the other cable, and will prevent cutting such other cable. The gripman opens and closes his grip by means of a long lever provided for that purpose. The grip is held to the cable by a ratchet and notch mechanism which the gripman controls through a brass at the upper or handle end of his grip lever. The latch is lifted out of the notches by pressing the brass against the grip handle which lifts the latch out of the notches. If anything catches between the brass and the grip handle so that the brass cannot be squeezed tightly against the grip it will prevent the removal of the latch from the notches and the grip will retain its hold on the cable.

On December 28, 1904, the plaintiff, Anna Latimer, hereinafter called the plaintiff, was a passenger on one of defendant's Twelfth street cable trains going from downtown to her home in the eastern part of the city. The train was crowded and plaintiff was standing on the front platform of the coach or rear car of the train. When the train approached the division point where the west-end cable goes into the power house, and the east end of the cable comes out of the power house, it was the duty of the gripman to release his hold on the west end cable. For some reason the grip was not released from the cable, and the train going at full speed ran against the dead-man which brought the train to an instantaneous stop. The gripman testified that he failed to let go of the cable because his mitt caught between the brass and the handle of the grip lever and he could not get it out. He admitted, however, that if he had been careful enough to see that the hand would not get in there his mitt would not have caught. The result of the train striking against the dead-man when the car was going at full speed was an instantaneous stopping of the

car, which piled up the passengers in the east end of the coach or trailer; the stove pipe fell out and the windows were shattered. The plaintiff was thrown from the platform on which she was standing and fell to the ground in front of the coach. She was carried into the car barn and from there was taken home. Dr. V. W. Gayle was summoned and found the plaintiff suffering intense pain and in a semi-conscious condition. Her elbow was cut in two places, her nose was broken, there was a discoloration under her eye and she complained of intense pain in the back, shoulder and left arm. Dr. Iuen, the defendant's surgeon, assisted Dr. Gayle in treating the patient. They cleaned out her wounds and sewed them up, reduced the fracture of the nasal bone and plastered it up."

The trial resulted in a judgment for plaintiff for four thousand five hundred dollars from which defendant appealed. The defendant assigns the following errors of record, viz.:

"1. The petition did not state facts sufficient to constitute a cause of action.

"2. The trial court erred in permitting plaintiffs to prove the number and ages of their children, the nature and extent of Mrs. Latimer's labors in the household prior to the accident and her inability thereafter to perform said labors.

"3. The trial court erred in giving instruction number 1 for plaintiffs.

"4. General Boyle's remarks to the jury were wrong and prejudicial.

"5. The verdict was excessive."

On defendant's first assignment of error, that the petition does not state a cause of action, defendant's argument is: "A collision imports negligence, and hence an allegation that it was caused by the negligence of defendant is sufficient. But a stop or start or jerk of a cable train does not import negligence, and hence an

allegation that such act was done negligently is without force or effect. To make a stop or start or jerk of a cable train negligence, it is essential that such stop, start or jerk should have been so extraordinary and unusual as to be attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or unskillful handling of the car by the gripman." In Bartley v. Railway, 148 Mo. 124, the court in speaking of cable cars used language similar to that employed by defendant, but it was not in reference to a pleading alleging negligence, but to a quantum of proof necessary to support an allegation of negligence in that respect. The language of the petition in that case was that the gripman, "so carelessly and negligently operated said grip iron as to cause said car to jerk and lurch with such force that it broke the plaintiff's hold and threw him on the paved street with great force." The court held the allegation to be "a specific charge of a particular act." And further held "In order to recover from a cable railroad it is not enough to show that there was a jerk, but it must affirmatively appear that the jerk was an extraordinary or unusual one," etc. In Redmon v. Railroad, 185 Mo. 10, the petition alleged that, "while making a high rate of speed, the said cars by reason of the carelessness and negligence of the defendant, its agents and servants, came to an instant, abrupt, unusual and sudden stop," etc. It was held that "Where the defendant is in exclusive control of a street car, the plaintiff makes out a prima-facie case of negligence by showing that he was a passenger on said car and that while sitting in his seat therein he was injured by the sudden and abrupt stopping of the car," etc. Tested by these decisions there can be no question about the sufficiency of the allegation of negligence. It seems to us an allegation that defendant while operating its car at a rapid rate of speed suddenly and without warning stopped it

so as to cause a violent and sudden shock to the passengers and of sufficient force to throw plaintiff against the car and onto the street, states a rather strong prima-facie case of negligence. Much more might be said and other authorities cited in answer to defendant's position, but the occasion does not demand it.

The plaintiff Anna was asked, "Of whom did your family consist at the time of the accident?" Defendant's counsel objected because the matter was immaterial. Plaintiff's counsel then said, "It is only for the purpose of showing the labor she performed and the extent of her ability to work; I want to show that she did her housework and cooking, and so forth." The court said, "It will be admitted for that purpose." Defendant excepted. She answered, "My husband, myself and five children." She then stated that the children's ages ranged from eight to nineteen years and that she took care of the family and house prior to the accident. She then went on to state that she was not able to do housework since the injury. In Stephens v. Railway, 96 Mo. 207, the plaintiff was asked if he was a married man and, if so, how many children he had. The court permitted him to answer, after saying to the jury that they must not consider the question and answer in fixing the amount of their verdict. The admission of the evidence in view of the verdict for eight thousand dollars was held to be error. And such was the holding in Dayharsh v. Railway Co. 103 Mo. 570; Mahaney v. Railway, 108 Mo. 191; Williams v. Railway, 123 Mo. 573. If the object and effect of the testimony was to create sympathy and thereby to enhance the amount of plaintiff's verdict, it should have been rejected. In the cases cited the number of children that the plaintiffs had did not in any way, so far as the records show, relate to the issues on trial, and the obvious tendency of the proof that the plaintiffs were married men and the fathers of children could have only one effect, and that was to

create sympathy and thereby enhance the amount of the verdict.

But the object of the introduction of the testimony objected to in this case, was entirely different. It was for the purpose of showing that plaintiff was a strong, healthy woman before her injury, capable of taking care of her family and performing the many household duties imposed upon her as the mother of many children, from which she was incapacitated since she received her injuries. The evidence went to establish one of her legal rights, the right to the ability to perform the wifely and motherly duties of her household—a right of the most priceless value to every good wife and mother, the deprivation of which is a most serious loss. It is said "Human nature is so constituted that physical labor in some form is essential to health and happiness, and to be deprived of the power to work is one of the most serious personal injuries independent of the pecuniary benefits that such labor may confer, and from any standpoint, whether of statute or common law, a married woman, like any other human being, ought to be compensated so far as may be for such deprivation, if wrongful, and we do not think the court committed error in so holding in this instruction." [Perrigo v. Transit Co., 185 Mo. 274.] The holding in that case was that the plaintiff, a married woman, was not entitled to recover for the loss of her services, "but for the impairment of her body and mind." In Becker v. Real Estate Co., 118 Mo. App. 74, the court used the following language: "The principle upon which a married woman is allowed compensation for impaired physical ability to labor would include mental distress, injury, deprivation —call it what you will—incident to inability to do any sort of labor which she was able to do before being injured, and ought to cover incapacity for household work as much as any other; though for *loss of time* from household service, as distinguished from inability to per-

form it, the right of action would remain with the husband."

There is another reason why the objection to the question and answer should be disregarded. The objection, as we have stated, was on the ground that they were immaterial. The objection was not good, for the testimony was certainly material, or we presume defendant's counsel would not be urging that the admission of immaterial evidence, evidence that could not have effected any purpose in the case, was a sufficient ground for reversal. It is held that an objection of incompetency directed to a question "may be passed by as of no value." [Bragg v. Railway, 192 Mo. 331.]

The defendant criticises plaintiff's first instruction for the same reason that it appled to the want of a sufficient allegation in the petition in order to constitute a prima facie case of negligence. It follows that what was said in reference to the sufficiency of the petition applies with equal force to the objection to the instruction.

One of the grounds urged for a new trial was the misconduct of plaintiff's counsel in his address to the jury wherein he referred to defendant's motorman as being incompetent when there was no evidence of such incompetency. The facts in reference to the matter appear by affidavits. No exceptions were taken at the time when the remarks were made and no note was made of them by the stenographer. These affidavits have no place in the bill of exceptions proper and the matter to which they refer is therefore not subject to review on appeal.

Lastly, defendant contends that the verdict of four thousand five hundred dollars is excessive. Considering that plaintiff, who was a strong, healthy woman prior to her injuries capable of taking care of a numerous household, was as the result of such injuries rendered weak and incapable of labor, had her nose broken and had become a nervous wreck, with her mind weak-

ened, her sight impaired and otherwise injured in other respects, we believe the verdict was not in excess of her damages. Affirmed. All concur.

