# ALBERT L. REEVES, Respondent and Appellant, v. FRANK J. LUTZ, Appellant and Respondent.

### St. Louis Court of Appeals, December 2, 1913.

1. **PHYSICIANS AND SURGEONS:** Care Required. A surgeon is not required to exercise extraordinary care in performing an operation, but is required to exercise the care, skill and diligence that are ordinarily possessed by the average members of his profession who are in good standing in similar localities, regard being had also to the state of medical and surgical science at the time.

2. ———: Malpractice: Question for Jury. In an action against a surgeon for burns inflicted by a hot water bag placed against a patient while a surgical operation was being performed, the mere fact that all of the expert witnesses who testified agreed that burns frequently occur from the use of the hot water bag under such circumstances was not sufficient to conclude the question of defendant's liability as a matter of law, in view of the fact that an ordinary inspection of the bag would have revealed the probabilities of its causing a burn.

3. **NEGLIGENCE:** What Constitutes. The mere fact that all men are careless at times does not relieve any person from performing his duties with due care in the circumstances of the case.

4. **PHYSICIANS AND SURGEONS:** Malpractice: Sufficiency of Evidence. In an action against a surgeon for burns inflicted by a hot water bag placed against a patient while a surgical operation was being performed, and maintained in that position for two hours, *held* that defendant should have made an inspection to ascertain whether an injury was being inflicted by the bag, and hence the question of whether or not he was negligent was for the jury.

5. ———: ———. A surgeon following the usual practice of placing hot water bags against the patient to sustain circulation during an operation, is bound to exercise ordinary care with respect to the use of the bags, as well as with respect to the operation itself.

6. ———: ———: Instructions. In an action against a surgeon for burns inflicted by a hot water bag placed against a patient while a surgical operation .was being performed, while there was evidence that patients sometimes struggle while undergoing an operation so as to bring parts of the body in contact

with the bags, resulting in burns, there was no such evidence as to the particular patient, but on the contrary, the undisputed evidence established that defendant himself placed the bag against plaintiff. At the instance of defendant, the court instructed the jury that if defendant exercised reasonable skill and care in the operation, plaintiff could not recover, although, during the operation, the hot water bag came in contact with her body and caused a burn. *Held*, that the instruction was misleading, as implying that defendant discharged his full duty if he used proper care in performing the operation, since it was essential that defendant also exercise the usual skill and care with respect to preventing a burn from the hot water bags. *Held, further*, that the instruction was misleading, as indicating that the hot water bag accidentally came in contact with the patient.

7. ———: ———: ———. In an action against a surgeon for burns inflicted by a hot water bag placed against a patient while a surgical operation was being performed, an instruction that the fact that defendant may have been guilty of inadvertence in the use of the hot water bag would not justify a verdict for plaintiff unless such inadvertence amounted to failure to use ordinary care and skill, was misleading, as charging that, although defendant was negligent, something more than such negligence was essential to make him liable; "inadvertence" itself signifying inattention and negligence.

8. NEGLIGENCE: Degrees of Negligence. Degrees of negligence are not recognized in this State.

9. PHYSICIANS AND SURGEONS: Malpractice: Negligence: Instructions: "Accident." In an action against a surgeon for burns inflicted by a hot water bag placed against a patient while a surgical operation was being performed, where it was shown that defendant himself placed the bag, an instruction that if the burn was the result of an accident, and not of defendant's negligence, plaintiff could not recover, was misleading, as submitting a theory of the case not justified by the evidence; the word "accident" meaning the happening of an unforeseen event, and not the happening of an event which defendant was bound to foresee.

10. ———: ———. It is negligence for a surgeon to insert a drainage tube in a wound and allow such wound to completely heal up over the tube so as to require a surgical operation for its removal.

11. APPELLATE PRACTICE: Trial Practice: Conflicting Evidence: Question for Jury: Review. The credibility of the witnesses and the weight of their testimony are for the jury,

and none the less so because the evidence preponderates in favor of one party; and if there is substantial evidence tending to support the theory advanced by the party recovering, it suffices, and a finding thereon is conclusive.

12. ———: **Trial Practice: Objections to Evidence.** A general objection to the reception of evidence is not a sufficient predicate for an assignment of error, on appeal, if such evidence was competent for any purpose; and this is especially true where the objection amounts to no more than that the evidence is immaterial.

13. **PHYSICIANS AND SURGEONS: Malpractice: Pleading: Setting Out Contract of Employment.** In an action against a surgeon for malpractice, it is proper to set out the contract of employment as matter of inducement.

14. ———: ———: **Evidence: Amount of Fee.** In an action against a surgeon for malpractice, where the petition properly set forth the contract of employment as matter of inducement, and then proceeded as in tort for defendant's negligence, and defendant's answer denied the employment so pleaded, evidence as to the amount of fee paid defendant by plaintiff was competent, as tending to prove the employment, and, although it might properly have been excluded on other grounds, it was admissible as against a general objection.

15. **DAMAGES: Husband and Wife: Loss of Consortium: Evidence.** In an action by a husband for the loss of his wife's services and society as a result of injuries inflicted upon her through the alleged negligence of defendant, evidence by the husband as to the pain suffered by the wife was admissible, since it would be difficult to establish his damages without evidence of the pain suffered by the wife, as a result of which he was deprived of his marital rights.

16. **HUSBAND AND WIFE: Right of Action by Husband: Loss of Consortium.** The husband's right of consortium at common law includes the right to the services of the wife to be rendered him, together with the right to her society and the comfort incident to her companionship, for the wrongful deprivation of which he may recover, although the wife was not accustomed to do any physical labor for him and although the pecuniary value of such services can not be accurately ascertained.

17. **DAMAGES: Evidence.** The law never requires pecuniary proof with reference to a non-pecuniary loss.

18. ———: **Husband and Wife: Loss of Consortium: Evidence.** In an action by a husband for the loss of his wife's services and society as a result of injuries inflicted upon her through the

alleged negligence of defendant, evidence that the wife was disabled from performing the duties of a housewife and that the husband was obliged to employ another woman to keep house for him warranted the submission of the value of such services to the jury, although there was no direct proof of such value.

19. ———: Instruction on Measure of Damages: Waiver of Generality. Where the instruction on the measure of damages is correct in its general scope, defendant waives the right to complain of its generality if he does not ask for a limiting instruction.

20. DAMAGES: Husband and Wife: Loss of Consortium: Excessiveness of Verdict. In an action by a husband for the loss of his wife's services and society as a result of injuries inflicted upon her through the alleged negligence of defendant surgeon in treating a wound left by a surgical operation performed by defendant, held that a verdict for $1500 was not excessive. [Reynolds, P. J., dubitante.]

21. APPELLATE PRACTICE: Cross Appeals: Affirmance on One Count and Reversal on Another: Disposition of Case. In an action for personal injuries, where a verdict was rendered for plaintiff on one count of the petition and for defendant on the other count, and, on appeal, the verdict for plaintiff was upheld and the verdict for defendant was set aside, held that the cause should be remanded to the trial court with directions to hold the verdict for plaintiff in abeyance until a verdict is rendered on the other count and then render a final judgment covering both counts.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*Edwin Silver, Morton Jourdan* and *John Cashman* for appellant, Frank J. Lutz.

(1) The law does not make a physician or surgeon an insurer against injury which may result to the patient from the treatment given. The law only requires that the surgeon shall bring to his case that degree of skill ordinarily possessed by the average of his profession in the particular locality or community in which

he renders the particular service; that he will exercise ordinary care in performing the operation and administering treatment; that in all matters of doubt he will exercise his best judgment as to the course he shall pursue, and will follow the methods and remedies generally recognized as proper in the particular school of learning to which he belongs. When these things are done, all responsibility of the surgeon ceases. The only exception is in cases of express contracts for specific results. Hales v. Raines, 146 Mo. App. 241; McClarin v. Grenzfelder, 147 Mo. App. 478; McMurdock v. Kimberlin, 23 Mo. App. 523; Gore v. Brockman, 138 Mo. App. 237; Longan v. Weltmer, 180 Mo. 322; Granger v. Still, 187 Mo. 197; Almond v. Nugent, 34 Iowa, 300; Smothers v. Hanks, 34 Iowa, 286; Peck v. Hutchinson, 88 Iowa, 320; Wurdeman v. Barnes, 92 Wis. 178; Graves v. Graff, 77 Wis. 178; Ransdall v. Grady, 97 Me. 322; Howard v. Grover, 28 Me. 100; Feeney v. Spalding, 98 Me. 111; Wenger v. Calder, 78 Ill. App. 275; Kruger v. Caughey, 149 Ill. App. 440; Doyle v. Owen, 150 Ill. App. 411; Dorris v. Warford, 30 Ky. Law. Rep. 963; Craig v. Chambers, 17 Ohio St. 253; English v. Free, 205 Pa. 624; Carstans v. Hanselman, 61 Mich. 426; Tefft v. Wilcox, 6 Kan. 46; Burnham v. Jackson, 1 Colo. App. 237; Staloch v. Holm, 100 Minn. 276; Williams v. Poppleton, 3 Ore. 139; Sly v. Wilbeur, 49 N. J. L. 685; Grainger v. Still, 187 Mo. 197. (2) Plaintiff's instruction number five, on the measure of damages, is erroneous in that it included in the damages which the jury may allow the loss of the services of the wife, though the amount of such loss was neither pleaded nor proven. Hendricks v. Butcher, 144 Mo. App. 675; Nelson v. Railroad, 113 Mo. App. 659; Wallack v. Transit Co., 123 Mo. App. 161; Graefe v. Transit Co., 224 Mo. 675. (3) The verdict is grossly and outrageously excessive, and is wholly unsupported by the evidence. (4) It was error to permit plaintiff

to testify as to the amount paid defendant for performing the operation. There was no claim for the return of this amount, which is an implied concession and admission that the operation was properly done. This character of testimony could serve but one purpose in the condition of the pleadings in this case; that is, to create a prejudice against defendant, and it was error to admit it. It was error to permit the plaintiff to testify regarding the pain and suffering of his wife at all. The court having admitted this evidence, committed further error in failing to limit its scope by proper instructions to the jury. There was no right of recovery in plaintiff for the pain and suffering of his wife, and this evidence had but one effect, and that was to excite the sympathy of the jury for the plaintiff in their prejudices against defendant.

*Douglas W. Robert,* for Albert L. Reeves (respondent and appellant); *Robert & Robert* of counsel.

(1) (a) Instruction No. 1 for defendant was erroneous in that it used the words in regard to this hot water bag, "came in contact with her person," and ignored the evidence of Miss Hazard that Dr. Lutz placed the bag himself and Dr. Lutz's admission that he did it deliberately. (b) Instruction No. 2 for defendant was erroneous in instructing the jury "that the fact that Dr. Lutz may have been guilty of inadvertence," would not justify a verdict for the plaintiff. He deliberately placed the bag upon Mrs. Reeves' leg and the bag was so hot it burned her. It was negligence to so use such a bag. (c) Instruction No. 3 for defendant was erroneous for the same reason. There was no testimony that burn was "the result of an accident." Dr. Lutz placed it there intentionally and his act was negligent. (d) Instruction No. 4 for defendant contained the same vice as Instructions No. 2 and 3, and is a repetition and accentuates the error. (2)

These instructions are conflicting, confusing and inconsistent. They both refer to the burn as an "accident" and as an "inadvertence." These are not synonyms. Funk & Wagnall Standard Dictionary; Davis v. Steuben, 19 Ind. App. 694; Russell v. Colyar, 51 Tenn. 154, 176. (3) These instructions are also conflicting and confusing in that they told the jury that the fact that the defendant may have been guilty of inadvertence (which is want of care; inattention; oversight; mistake; lack of heedfulness or attention), yet the plaintiff could not recover if the jury found that defendant used the same care and skill of ordinary skillful and careful surgeons. Instructions should not be inconsistent or contradictory. Sheperd v. Transit Co., 189 Mo. 373; Mansur v. Ritchie, 143 Mo. 587; Spillane v. Railroad, 111 Mo. 565; Stone v. Hunt, 94 Mo. 475; White v. Ins. Co., 93 Mo. 282; Price v. Railroad, 77 Mo. 508; Mining Co. v. Casualty Co., 161 Mo. App. 208; Wallack v. Transit Co., 123 Mo. App. 167. The charge of negligence is not refuted by evidence that the best of surgeons are sometimes negligent. Samuels v. Willis, 133 Ky. 459. (4) Instructions cannot be broader than the facts proven, nor should they submit matters not supported by evidence. Degonia v. Railroad, 224 Mo. 564; Crow v. Railroad, 212 Mo. 611; Robertson v. Railroad, 152 Mo. 382; Waddingham v. Hulett, 92 Mo. 528; Vanhooser v. Berghoff, 90 Mo. 487; Mansur v. Botts, 80 Mo. 658; Price v. Railroad, 77 Mo. 508; Bank v. Murdock, 62 Mo. 70; Ludwig v. Cooperage Co., 156 Mo. App. 128; Crumley v. Timber Co., 144 Mo. App. 528; Marr v. Bunker, 92 Mo. App. 651; Day v. Railroad, 81 Mo. App. 471. (5) It is erroneous to give undue prominence to evidence by repetition of instructions. Cytron v. Transit Co., 205 Mo. 692; State v. McKinzie, 102 Mo. 620. (6) The petition does not count upon a contract. It sounds in tort. The contract was pleaded merely as an inducement. Hales v. Raines, 162 Mo. App. 46; Canady v.

Railroad, 134 Mo. App. 282; Carpenter v. Walker (Ala.), 1912, D. Am. and Eng. Ann. cases, 863. (7) The petition does not charge defendant with negligence (other than described in the first count) in the actual operation, but charges negligence in the treatment. That negligence consisted in allowing the wound to heal with the tube in it. This was not exercising ordinary care. Hales v. Raines, 162 Mo. App. 46; Ruth v. McPherson, 150 Mo. App. 694; Ruth v. Johnson, 172 Fed. 191; Reynolds v. Smith, 127 N. W. (Iowa) 192; Davis v. Kerr, 86 Atl. (Pa.) 1007; Brown v. Bennett, 156 Mich. 654; Samuels v. Willis, 133 Ky. 459; Grainger v. Still, 187 Mo. 197; West v. Martin, 31 Mo. 379; Beck v. Klink, 78 Iowa, 696; Carpenter v. Blake, 60 Barb. 488; Gerken v. Plimpton, 70 N. Y. S. 793. (8) (a) Plaintiff was entitled to recover for the loss of services, society and companionship of his wife, although there was no definite proof of their value. Furnish v. Railroad, 102 Mo. 669; Bruce v. Railroad, 158 S. W. 102; Jennings v. Appleman, 159 Mo. App. 12; Cullar v. Railroad, 84 Mo. App. 347. (b) If the defendant desired the damages restricted and to submit the condition of the health of Mrs. Reeves to the jury it was insumbent upon him to do so by offering an instruction on this issue. Waddell v. Railroad, 213 Mo. 8; Longan v. Weltmer, 180 Mo. 335; Browning v. Railroad, 124 Mo. 55; Hales v. Raines, 146 Mo. App. 243; Lathrop v. Railroad, 135 Mo. App. 16; Thompson v. Independence, 131 Mo. App. 375; Mabrey v. Road Co., 92 Mo. App. 610. (c) However, the second operation, which was after the suit was filed, kept her from her duties but ten days and she was thereafter able to perform her duties. All this was brought out by defendant. (9) The verdict is not excessive. This court will interfere on this ground only in extreme cases. Furnish v. Railroad, 102 Mo. 669; Bruce v. Railroad, 158 S. W. 102; Cullar v. Railroad, 84 Mo. App. 347; Perrett v. Kansas City, 162 Mo. 253; Williams v. Railroad, 123 Mo. 586. (10)

(a)  It was not error to permit plaintiff to testify as to the amount paid Dr. Lutz to perform the operation. This was a part of the contract, the inducement.  Authorities under point 6.  (b)  Besides, the only objection defendant made to this testimony was that it was immaterial.  This is no objection at all.  Latimer v. Railroad, 126 Mo. App. 70.  (11)  (a)  It was not error to permit plaintiff to testify as to the pain and suffering of his wife.  The fact that she suffered tended to show that she could not perform her household duties, and the loss of society and companionship.  Cullar v. Railroad, 84 Mo. App. 347-350.  (b)  Besides, no objection was made to the testimony itself.  The only objection made was that a layman is not competent to testify as to pain and suffering; that it would be competent only for a physician to so testify.  Partello v. Railroad, 217 Mo. 645.  (c)  If the defendant desired the court to limit the scope of this evidence by an instruction to the effect that plaintiff could not recover for the pain and suffering of his wife, it was his duty to offer such instruction.  Civil courts are not bound to give instruction unless asked.  Brown v. Globe Ptg. Co., 213 Mo. 611.

NORTONI, J.—These are cross-appeals.  The suit is for damages accrued to plaintiff on account of the loss of service of his wife through the negligence of defendant while performing and in treating a surgical operation upon her.  The petition proceeds in two counts.  On the first count the finding and judgment were for defendant, while plaintiff prevailed on the second.  Plaintiff prosecutes an appeal from the judgment against him on the first count, and defendant prosecutes an appeal from the judgment against him on the second count.

Defendant is a practicing physician and surgeon in St. Louis, and was employed as such to remove a cancer from the breast of plaintiff's wife.  It appears that,

for the purpose of the operation, plaintiff brought his wife from Jefferson City to St. Louis, and placed her in the Josephine Hospital, under the care of defendant, December 13, 1910. The operation was performed there on that date, and Mrs. Reeves, the patient, was discharged by defendant about January 13, 1911. It appears that, in performing such an operation, it is the usual practice to place hot water bags about the patient, with a view of sustaining the circulation during the ordeal and thereafter. Then, too, after the operation is performed, it is a proper practice, where the wound is of considerable area, to place drainage tubes therein, for the purpose of emitting such secretions as accumulate and might otherwise retard or impede the healing process. At the time plaintiff's wife was placed upon the operating table and while the anaesthetic was being administered, defendant personally placed a hot water bag against her limb, immediately above the ankle, and permitted it to remain there during the operation which ensued. The operation, which was an extensive one, in that the entire right breast of the patient, together with the glands under the arm, were removed, consumed about two hours. It appears that this hot water bag so placed inhered with unusual heat, for it made a deep burn on the patient's leg about three inches in breadth and five or six inches in length. The burn was not discovered, however, by defendant until the following day, when his attention was directed to it by an assistant. Thereupon defendant immediately set about treating it, but it seems to have continued in a painful and threatening condition for several weeks after plaintiff's wife returned to her home in Jefferson City on January 14th.

Plaintiff's wife withstood the operation well enough, and no complaint is made with respect to the manner of its performance, save that pertaining to the placing of the hot water bag against her limb so as to inflict the burn above mentioned. However, complaint

is made with respect to the treatment of the wound resulting from the removal of the cancerous breast, in that it is said defendant carelessly omitted to remove one of the drainage tubes therefrom, and permitted the wound to heal over while such tube continued therein. There is evidence tending to prove that, on January 14, when plaintiff's wife returned home to Jefferson City, the wound in the anterior portion of the breast was healed entirely, though it transpired afterwards that a drainage tube was concealed therein, for it festered and created an abscess. After returning to her home, Mrs. Reeves suffered considerably from the effects of the burn on her limb, and on January 19 plaintiff called in Dr. F. B. Hiller to treat that injury. Dr. Hiller treated the burn for several weeks and in the interim the patient began to suffer as well from the effects of the concealed drainage tube in the wound in her breast. On March 26, Dr. Hiller discovered a slight speck on the breast about the size of a split pea, it is said.

Though Dr. Hiller was called to treat the burn on the limb on January 19, it does not appear just when his attention was called to the trouble resulting from the concealed drainage tube in the wound in the breast. It appears that Dr. Hiller was the secretary of the State Board of Health, and, therefore, not in the active practice at Jefferson City. Because of this, he says he kept no books containing dates or records of his treatment. However, concerning the condition of the wound on the breast of plaintiff's wife, the doctor testifies as follows: "At the time I saw her, the wound in her right breast as a result of the operation had healed, with the exception of the point of drainage in the rear under the arm and back of the arm and a point of apparent infection, or a sore spot to be plain, showed in the anterior incision. There was nothing protruding from the breast. There was nothing protruding from the posterior drainage. It had practically healed.

There was oozing of some serum and consequent crusting. I continued to treat Mrs. Reeves' breast and leg at intervals up until the 26th of March and a little later. I have forgotten the exact dates. I kept no record of it. On the 26th of March I discovered a drainage tube in Mrs. Reeves' breast; it was just showing at the wound, just visible, which I removed. I will say that prior to this visit on the 26th of March, I had not seen her for probably ten days, a week or ten days, I removed what we call a cigarette drain from her breast. . . ."

Here the doctor identified the drainage tube so removed, which was introduced in evidence, and continued, saying: "This point, on the anterior or in front, simply showed as a little suppurating point apparently of infection, probably the size of a split pea." Other evidence goes to the effect that Mrs. Reeves suffered great pain from both the burn and the concealed drainage tube in her breast until the tube was finally removed and for some days thereafter. Mr. Reeves, in speaking of the condition of his wife's breast, immediately before the extraction of the drainage tube and thereafter, says: "This formation finally opened on the breast. It became an abscess—that is, an opening or a hole." It should be said here, however, that another drainage tube had been inserted in the wound, designed to drain the posterior portion thereof under the arm, and this was removed in due time. No complaint is made in the case touching this matter, but it is mentioned in the evidence as revealing a small spot under the arm not yet healed when the patient returned home on January 14th and, indeed, for some time thereafter. This matter is referred to here merely for the purpose of obviating confusion and to the end of elucidating the particular drainage tube complained of, that is, the one inserted by defendant in the anterior portion of the breast.

Because of the severe burn on the limb and the concealed drainage tube, it appears plaintiff's wife suffered great pain and agony and was wholly unable to perform the usual service of a housewife until about the time when this suit was filed, on April 24, 1911.

As before stated, the petition is in two counts. The first declares upon and seeks a recovery for the loss of services, companionship and society of plaintiff's wife as a result of the burn inflicted upon her limb through the alleged negligence of defendant in placing an unusually hot water bag against it and thus inflicting the burn. The second count declares upon and seeks a recovery for the loss of services, companionship and society of plaintiff's wife, occasioned through the alleged negligence of defendant in the treatment of the surgical wound, through omitting to remove therefrom the drainage tube in the anterior portion of the breast and permitting the wound to heal over the same. As we interpret the case, it would seem that a recovery is sought in the first count for the loss of service, companionship and society which ensued from the burn for some weeks after plaintiff's wife returned home on January 14th, and until the burn healed, about the middle of February; and a recovery is sought in the second count as for the loss of services, companionship and society of the wife which ensued during the latter half of February and the month of March, and until the suit was filed April 24th, from the concealed drainage tube in the breast. Though the point is not pressed, it is clear enough that, in this view, the two counts do not declare upon and seek a recovery for the identical or the same cause of action.

We will first consider the plaintiff's appeal and thereafter that of the defendant. Plaintiff's appeal relates alone to the finding and judgment against him on the first count of the petition.

There can be no doubt that the evidence revealed a case for the consideration of the jury on the first count

of the petition, for though all of the expert witnesses
say it was proper practice to use a hot water bag at
the time defendant employed the one involved here,
they say, too, it was not proper practice to use one so
hot as to inflict a considerable burn on the patient.
There is evidence, it is true, and this from eminent
physicians and surgeons, that such burns frequently
occur while an operation is being performed; but it
would seem that an adherence to the precepts of ordi-
nary care in the circumstances of the case should obvi-
ate them. Though it be that the surgeon is not required
to exercise extraordinary or unusual care in the per-
formance of his task, the fact of his holding out to per-
form the duties of the office he pursues annexes the ob-
ligation to his calling to exercise the care, skill and dil-
igence that are ordinarily possessed by the average
members of his profession in good standing in similar
localities—regard being also had to the state of medi-
cal and surgical science at the time. [See Grainger v.
Still, 187 Mo. 197, 85 S. W. 1114; Hales v. Raines, 162
Mo. App. 46, 141 S. W. 917.] Defendant's obligation
was, therefore, to exercise ordinary care for the pro-
tection of Mrs. Reeves from burns likely to occur as a
result of the application of hot water bags while the
operation was being performed. If, as defendant and
the expert witnesses say, burns are frequently inflicted
in such manner, then the precepts of ordinary care re-
quired defendant to anticipate as much as within the
range of reasonable probability in the circumstances of
the case. The evidence is, that the hot water bag was
wrapped with a towel and the patient's limb covered
with a flannel operating garment. But be this as it may,
the fact remains that a considerable and severe burn
ensued from the application of the hot water bag. It
would seem that ordinary inspection of the heated
condition of the water and bag would reveal the proba-
bilities of a burn, notwithstanding the towel and the
flannel garment mentioned. Moreover, the application

of the hot water bag to the limb continued for as much
as two hours, and during the time some inspection
should have been made to ascertain whether an injury
was thus being inflicted. The mere fact that all of the
eminent medical men who testified say burns frequently
occur from the use of hot water bags in such circum-
stances is not sufficient to conclude the matter as one
of law, for it would seem that ordinary care could pre-
vent such a result. Indeed, the same witness said, too,
that it was not proper practice to inflict a burn upon
the patient during the operation, from the application
of the hot water bag. But be this as it may, the mere
fact that all men are careless at some times does not
relieve another from performing his duties with due
care in the circumstances of the case. Obviously the
evidence reveals a case for the jury on the first count
of the petition. [See Samuels v. Willis, 133 Ky. 459.]

The court treated the case as one for the jury, and
in submitting it instructed as follows, on behalf of de-
fendant and at his request:

"1. The court instructs the jurors (on the first
count in the petition) that the employment of defendant,
Dr. Lutz, to perform the surgical operation (mentioned
in the evidence) on plaintiff's wife was not for the exer-
cise of extraordinary skill and care by defendant in the
matter of said operation; defendant was only required
to exercise reasonable skill and care, that is, such skill
and care which an ordinary skillful and careful surgeon
is accustomed to exercise and use in like surgical opera-
tions, under like circumstances; and, *if defendant exer-
cised and used such skill and care in said operation*
performed on plaintiff's wife, then the plaintiff cannot
recover on the first count of his petition, although dur-
ing the performance of said operation the hot water bag
mentioned in the evidence *came in contact* with her per-
son and caused the injuries out of which this suit grows.

"2. The court further instructs the jurors on the
first count of the petition that the fact that defendant,

Dr. Lutz, may have been guilty of *inadvertence,* in connection with the use of the hot water bag whereby plaintiff's wife suffered the injuries mentioned in the evidence, will not justify a verdict for plaintiff unless such *inadvertence* amounted to failure on defendant's part to exercise in the use of said hot water bags, the skill and care of an ordinarily skillful and careful surgeon, taking into consideration the character of the operation and all the attending circumstances.

"3. The court instructs the jurors that if the injuries to the wife of the plaintiff mentioned in the first count of plaintiff's petition was the result of *an accident and not of defendant's negligence,* as that term is defined in other instructions given to you in this case, then the plaintiff is not entitled to recover on the first count of his petition, and your verdict on said count will be for the defendant.

"4. The fact that defendant, Dr. Lutz, may have been guilty *of inadvertence,* in connection with the use of the hot water bag whereby plaintiff's wife suffered the injuries mentioned in the evidence, will not justify a verdict for plaintiff, unless such inadvertence amounted to failure on defendant's part to exercise the skill and care of an ordinarily skillful and careful surgeon, taking into consideration the character of the operation and all the attending circumstances."

We regard each and all of these instructions as erroneous in the circumstances of the case, in that they are misleading. In the first instruction we have italicized the misleading features. We italicize, too, misleading words in the others. By the concluding portion of the first instruction the jury are told "if defendant exercised and used such skill and care in said operation performed on plaintiff's wife, then the plaintiff cannot recover on the first count of his petition, although, during the performance of said operation, the hot water bag mentioned in the evidence came in contract with her person and caused the injuries out of

which this suit grows." This portion of the instruction seems to contemplate that the operation is separate and apart from the use of the hot water bag. No doubt this is true as to the operation proper. However, it was in connection with and as an incident to the operation that the hot water bag was employed by defendant. It is clear that the obligation to exercise ordinary care obtained as well concerning the use of the hot water bag as it did in respect of the operation itself. The instruction seems to imply that if defendant used proper care in performing the operation properly, then the full measure of his obligation was acquitted, and this, too, although the hot water bag came in contact with the person of plaintiff's wife and burned her. In this the instruction is misleading, for it was not enough to exercise the requisite skill and care in performing the operation but it was essential as well for defendant to exercise the usual skill and care in looking out for and preventing the burn.

Moreover, the instruction minimizes the matter of defendant's placing the hot water bag by telling the jury that if they found it "came in contact" with the person of plaintiff's wife, etc. There is evidence in the case that sometimes patients struggled while undergoing an operation and in this manner portions of the body come in contact with a hot water bag so as to lie upon it and receive a burn. But there is not a word of evidence in the record here to the effect that plaintiff's wife struggled or came in contact with the bottle in this wise. On the contrary, both the attending nurse and defendant himself testified in plain terms that defendant personally took the hot water bag in his hands and placed it against Mrs. Reeves' limb while the anaesthetic was being administered. This being not only the undisputed evidence, but the admission of defendant as well, it appears that the reference in the instruction to the hot water bag, as if it merely came in contact with plaintiff's wife's limb, is misleading.

Both the second and third instructions above copied employ the word "inadvertence" as though such would excuse defendant for the consequences of the injury received through the burn. The jury are told substantially that though defendant may have been guilty of *inadvertence* in connection with the use of the hot water bag such will not justify a verdict for plaintiff unless his inadvertence amounted to a failure to use ordinary skill and care in the use of the hot water bag. The word "inadvertence" is defined by Webster to signify inattention and negligence. This being true, the two instructions under consideration inform the jury that, though defendant was negligent in the use of the hot water bag, no recovery should be allowed, unless such negligence amounted to a failure on his part to exercise the skill and care of an ordinarily skillful and careful surgeon, taking into consideration the character of the operation and all the attending circumstances. Though it be that the latter is the proper measure of care required, it is certainly true that degrees of negligence are not recognized in the jurisprudence of this State. Therefore, we regard these instructions as misleading, for the reason that they seem to direct the jury that, though defendant was negligent, something more than the negligent breach of duty recognized in our law was essential in order to affix liability for the burn.

Defendant's third instruction told the jury that if plaintiff's wife's injury from the burn was the result of an accident and not of defendant's negligence, plaintiff is not entitled to recover. There is no evidence in the case justifying the theory of accident and this instruction, too, was misleading on the issues made. The evidence is plain, positive and direct, both from the nurse, who testified at the instance of plaintiff, and of defendant, who testified for himself, that defendant took the hot water bottle into his own hands and personally placed it against the limb of Mrs. Reeves, where

it was permitted to remain and accomplish the burn. There is no suggestion that defendant placed the hot water bag in some particular place or position and that it was accidentally moved against the patient's limb or that she accidentally placed her limb upon it. It is true, as before said, that there is evidence that patients sometimes do accidentally come in contact with a hot water bag while kicking during the administration of an anaesthetic. But no one suggests that the patient moved about in the instant case, and defendant admits that he placed the hot water bag against the limb where the burn was effected. Defendant says, "To the best of my recollection, the nurses placed the hot water bag at the bottom of her feet, which I removed, . . . I moved it up between her limbs—that is to say, between the ankle and the knee joint." It is clear enough that there was no place in the case for an instruction on the theory of accident, which is said by Webster to be the happening of an unforeseen event, for defendant, in the eye of the law, is required to foresee such results as might be anticipated within the range of reasonable probability through exercising ordinary care to that end. All of the instructions above copied seem to be drafted with a view of directing the attention of the jury away from the fact that defendant, himself, placed the hot water bag at the place where it inflicted the burn, and to minimize the result as attributable to mere accident. They are highly misleading, and it is obvious they were prejudicial to plaintiff's rights on the true issue arising on the first count of the petition. A new trial should be awarded on this count of the petition for the reason above stated.

We come now to consider defendant's appeal from the judgment against him on the second count of the petition. It is urged the court should have directed a verdict for defendant on this count because the evidence is uniform that it was proper practice to insert a drainage tube in the wound and permit it to remain

there until the healing was complete. It is true the record abounds with expert testimony to the effect that it was proper to insert the drainage tube, but no witness testifies that it was proper to permit the wound to heal over such tube, and it is certain that none would undertake to do so. Defendant says that he inserted the particular drainage tube involved here in the wound on January 13—that is, on the day of the last treatment of the wound by him. In this he is corroborated by his assistant and a nurse, and all of them say that the tube protruded slightly from the wound at that time. But though such be true, the evidence for plaintiff is contradictory, in that it goes to show the wound was actually healed with the drainage tube concealed therein, when the patient returned to her home in Jefferson City on the following day. As before said, the drainage tube involved here was that inserted in the wound in the right breast and the averment of negligence touching the matter is, that defendant "carelessly and unskillfully permitted said wound to completely heal up and over said drainage tube and gauze, and negligently, carelessly and unskillfully permitted the same to remain within the body of the plaintiff's said wife." No one can doubt that such was negligence on the part of defendant, if established to the satisfaction of the jury, and it appears to have been thus established. [Ruth v. Johnson, 172 Fed. 191.]

The evidence for plaintiff touching this matter is as follows: "When Mrs. Reeves returned home on the 14th of January, the whole line of incision on her right breast was entirely healed. There was a mere large dot and a little scab on a small incision that seemed to have been made below the right arm and a little back, and that scab I dressed for her that evening; just rubbed the scab off. It was closed, but it didn't seem to be entirely healed. That was under the arm. *On the breast it was entirely healed.*" (Italics are our own.) From this testimony it appears that, while the

point of drainage under the right arm, from whence the tube had been theretofore removed, was apparent, but not entirely healed, for a small scab covered it, the incision on the breast, from whence Dr. Hiller subsequently extracted the concealed drainage tube, was entirely healed over, and this, too, on the day following plaintiff's discharge by defendant. Though it be that defendant and his witnesses say the tube was inserted on January 13, and that such insertion was proper and that it extended slightly from the body, it appears clear enough from the testimony of plaintiff such could not be the fact, if the wound was healed over it on the following day. No one can doubt that the matter of the credibility of the witnesses and the weight and value of their testimony was a question for the jury, and it is certainly none the less so because the evidence preponderates in favor of defendant. If there is substantial evidence tending to support the theory advanced by plaintiff, it will suffice, and the question is concluded here by the finding of the jury thereon. [See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.]

The petition sets forth a contract whereby it is averred plaintiff employed defendant, who held himself out as possessing the requisite skill as a physician and surgeon, to perform the operation in removing the cancer and to treat plaintiff's wife until the surgical wound was healed. After having thus alleged the contract of employment, by way of inducement, it proceeds as in tort as for the negligent performance of the duty annexed by law to the calling of a physician and surgeon. Plaintiff testified that he paid defendant $250 in compensation for the operation and treatment while his wife was yet in the hospital. The testimony of plaintiff to the effect that he paid defendant $250 as his fee was objected to, but the court admitted it over defendant's exception. It is urged this was error,

179 App. 6

for it is said that it no doubt enhanced the recovery to that amount and was therefore prejudicial. While it may be that it is competent to recover from the surgeon the amount paid him in compensation for an operation negligently and carelessly performed, it must be conceded that such is not to be allowed here, for no prayer to that effect is contained in the petition. This suit proceeds alone on the part of the husband for the loss of the services, companionship and society of the wife, and, of course, he is therefore to be compensated only on that score. But be this as it may, the only objection interposed to the testimony that plaintiff had paid $250 to defendant in compensation of his charge is that such evidence was immaterial. The rule of practice is well established in this State that a mere general objection to the reception of evidence is unavailing to entitle the objecting party to a review of the error assigned thereon in the appellate court, if such evidence so objected to was competent for any purpose in the case. [See Bragg v. Met. St. Ry. Co., 192 Mo. 331, 91 S. W. 527.] This is especially true where the objection amounts to no more than that the evidence is immaterial, as here. [See Latimer v. Met. St. R. Co., 126 Mo. App. 70, 78, 103 S. W. 1102.] Though it be the evidence here objected to might properly have been excluded on other grounds, it was certainly competent under the allegations of the petition, which, by way of inducement, set forth the contract of employment of defendant and under which the operation was performed and treatment rendered. It is entirely proper to set forth the contract of employment as matter of inducement in a malpractice case, as we have heretofore declared. [See Hales v. Raines, 162 Mo. App. 46, 141 S. W. 917.] Defendant did not admit, but rather denied, through the office of the general denial in his answer, the employment set forth in the petition, and it was therefore certainly competent for plaintiff

to prove it, and to prove, too, that he had fully performed all of the conditions on his part.

It is urged that the court erred in permitting plaintiff to detail the pain and suffering of his wife incident to the concealed drainage tube in her breast and subsequently for a time to its removal by Dr. Hiller on March 26. The argument is that, as plaintiff is not entitled to recover for such pain and suffering of his wife, the evidence should not be received. But we are not persuaded to this view. It is true plaintiff was not entitled to recover in this action for the pain and suffering his wife endured, but he was entitled to the services of his wife, of which such pain and suffering deprived him, and he was entitled, too, to the companionship and society of his wife free of such pain and suffering as defendant's negligent act entailed upon her. It would be difficult to establish his case of loss of services, companionship and society of the wife without giving evidence of the pain and suffering endured by her, which, as a result of defendant's fault, tended to deprive him of his marital rights in the premises. [For an authority in point, see Cullar v. M. K. & T. R. Co., 84 Mo. App. 347.]

There is no evidence tending to prove the value of the services of plaintiff's wife to him. And because of this it is urged the court erred in submitting that matter to the jury. However, there is an abundance of evidence that plaintiff's wife was disabled from performing the duties of a housewife and that he employed another to keep house for him. Obviously this is sufficient. It may be, in cases where the wife is conducting a business on her own account, and she suffers an injury through the negligence of another, which impairs and diminishes her earning capacity, that, in her suit on that account, evidence must be given of the value of the loss of services or earnings. Such is the rule which obtains generally in suits for damages when it is sought by plaintiff to recover for loss of his own

services and seek something substantial—that is, more than nominal damages—on account of diminished earning power and loss of time. [See Wallack v. St. Louis Transit Co., 123 Mo. App. 160, 100 S. W. 496.] Moreover, it is said, too, that the husband is not entitled to recover for the loss of services of his wife, such as her separate earnings, which are assured to her under the married woman's statute, when it appears she is conducting a separate business on her own account. In cases of that character, it is said the husband's measure of recovery for loss of the services of the wife pertains alone to her services as his wife. [See Nelson v. Met. St. Ry. Co., 113 Mo. App. 659, 88 S. W. 781.]

But be all of this as it may, the instant suit proceeds as for a violation of the ancient common law right of *consortium.* The husband's right of *consortium* at common law included the right of the services of the wife to be rendered to the husband, together with the right of her society and the comfort incident to the association and her companionship. Such are the rights which, it is asserted here, defendant has invaded and of which plaintiff has been deprived by his wrongful act. [See Stout v. Kansas City Terminal R. Co., 172 Mo. App. 113, 157 S. W. 1019; Marri v. Railroad, 84 Conn. 9, 78 Atl. 582, 33 L. R. A. (N. S.) 1042, Ann. Cas. 1912B 1120.] In such cases, it would be difficult, indeed, to ascertain in dollars and cents the value of the *consortium* of either spouse to the other. The relation and the right are rather of a sacred character than of a valuable monetary interest or right. In this view, our Supreme Court has determined that it is not essential to introduce evidence tending to prove the value of the society and companionship of the wife. Obviously the principle supporting this view goes to the effect that the law never requires pecuniary proof with reference to a nonpecuniary loss. Such is the thought of an eminent author on the subject. [See Watson on Damages, p.

403.] Therefore, in a suit by the husband for the loss
of the wife's companionship and society as a result of
personal injuries sustained by her through the negli-
gence of another, there need be no direct proof of the
value of such society, comfort and companionship. The
very nature of the subject does not admit of such proof.
This being true, the assessment of reasonable compen-
sation therefor must, it is said, necessarily be com-
mitted to the sound discretion and judgment of the
triers of the fact. [See Furnish v. Mo. Pac. R. Co.,
102 Mo. 669, 15 S. W. 315; Waston on Damages, pp. 403,
404; 4 Sutherland on Damages (3d Ed.), sec. 1252.]

As the right to the society, comfort and companion-
ship of the wife is but parcel of the common law right
of *consortium,* it would seem the same rule should apply
to the loss of her services as well, for, indeed, after all,
the right to the society and companionship is included
within that of the husband to the wife's unimpaired
services. It is certain that the husband is entitled to
recover for the loss of the services of his wife of which
he is deprived by the negligent act of another, even
though the parties are in such circumstances that she
is not accustomed or desired to do physical labor; or
the husband may not have realized anything from her
services before she was injured. [See 4 Sutherland on
Damages (3 Ed.), sec. 1252.] Therefore, the courts
declare, in the cases of the character of this one, that
there need be no direct or express evidence of the value
of the wife's services, either by the day, week, month or
of any other period of time, or of any aggregate sum
touching the matter, for it is sufficient to show her dis-
ability from performing service if it were desired or
she chose to do so. It is said when the loss of a wife's
services resulting from a personal injury is to be com-
pensated for to her husband, she is not to be treated as
an ordinary servant or as a mere hireling. On the con-
trary, she is to be regarded as sustaining to her husband
and his household a relation special and peculiar in

itself, for the deprivation of which, even for a short time, compensation for services may not be accurately ascertained and given in evidence, in dollars and cents. Therefore, the actual facts and circumstances of each case, together with the experience and judgment of the jurors, are to furnish the guide in determining the amount of the recovery, and this, too, without evidence of value. [See Met. St. Ry. Co. v. Johnson, 91 Ga. 466; Indianapolis St. Ry. Co. v. Robinson, 157 Ind. 414; 4 Sutherland on Damages (3d Ed.), sec. 1252, and cases in notes; Bruce v. United Rys. Co., 175 Mo. App. 568, 158 S. W. 102.]

Plaintiff's instruction on the measure of damages was well enough in its general scope and contained no elements amounting to misdirection. This being true, it must be regarded as sufficient, under the rule of Browning v. Wabash R. Co., 124 Mo. 55, 27 S. W. 644, for defendant asked no limiting instruction whatever. The rule that defendant may waive, through omitting to request a limiting instruction, the right to complain of an instruction on the measure of damages, which is sufficient in its general scope and contains no elements of misdirection, is constantly adhered to and has been but recently reaffirmed in both the Supreme Court and this court, as will appear by reference to King v. City of St. Louis, 250 Mo. 501, 157 S. W. 498; Nelson v. United Rys. Co., 176 Mo. App. 423, 158 S. W. 446. That the rule of the Browning case applies in malpractice cases as well as others is well settled by decisions of the Supreme Court in point. [See Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655; Wheeler v. Bowles, 163 Mo. 398, 63 S. W. 675.]

We do not consider the verdict of $1500 on the second count as excessive. All of the points raised have been duly considered and no reversible error appears, in so far as the recovery on the second count of the petition is concerned. However, the judgment must be reversed for the errors pointed out with respect to the

trial on the first count and the cause remanded for further proceedings thereon.

It is therefore ordered and adjudged that the judgment be reversed and the cause remanded for further proceedings on the first count and that the court hold the verdict in abeyance on the second count until the first one is finally disposed of and the final judgment in the case to be entered on both counts. The plaintiff should recover the costs of the appeal. It is so ordered and adjudged. Both *Reynolds, P. J.*, and *Allen, J.*, concur in all that is said in the opinion, save Judge REYNOLDS is of the view that while $1500 would not be an excessive recovery on both counts of the petition, he is doubtful of it being proper as the verdict is on the second count alone.