EMIL MARRI *vs.* THE STAMFORD STREET RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and GAGER, Js.

The word *consortium* signifies the right which a husband has to the performance by the wife of all the duties and obligations arising out of the marital relation, including not only the right to her society, companionship and affection, but the right to her services as well; although as sometimes used it excludes the latter.

As one result of the more liberal status accorded by General Statutes, §§ 391–393, 4545–4547, to women married on or after April 20th, 1877, a wife married after that date may now sue for and recover in her own name and right compensation for all personal, physical injuries sustained by her and negligently caused by another, including damages for the diminution or destruction of her capacity to assist and serve her husband in all practical ways; and inasmuch as the husband's former common-law right to recover for loss of *consortium* in such cases rested essentially on the same foundation, it necessarily follows that the wife's right of recovery must be regarded as exclusive, except as to such expenses as the husband may

have been forced to incur by reason of the wife's injury, which rest upon a different basis.

The history and development of the common law in relation to *consortium* reviewed.

Argued November 2d, 1910—decided January 6th, 1911.

ACTION to recover damages for personal injuries sustained by a husband, and for the loss of his wife's services and society due to her injuries, alleged to have been caused by the defendant's negligence, brought to and heard in damages by the Superior Court in Fairfield County, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error in part.*

This action was brought to recover damages claimed to have been sustained by the plaintiff as the result of a collision between a trolley-car negligently operated by the defendant's servant in the streets of Stamford, and a carriage drawn by horses, in which the plaintiff and his wife were being driven. Recovery was sought for personal injuries to the plaintiff, harm done to the horses and carriage owned by the plaintiff, and injuries to the plaintiff in his relative rights, through the expenditure which he was required to make in the care and cure of his wife, who was personally injured at the same time, and through his loss of her services and companionship resulting from her injuries. The court found that the collision and resulting injuries were caused by the defendant's negligence, and without contributory negligence on the part of the plaintiff or Mrs. Marri, and rendered judgment in the plaintiff's favor. Included in the amount for which recovery was thus had, was a sum for money expended for doctors, medicine, care and nursing, and the sum of $300 "for loss of *consortium.*" The appeal assigns a number of errors, but all the assignments are waived except one which charges the court with error in its allowance of

the $300 for loss of *consortium*.   Mrs. Marri in her action for the consequences of the same accident, brought and heard at the same time, was allowed full compensation for all her injuries, including pain and suffering.

Mr. and Mrs. Marri were married in 1888.

*William B. Boardman*, with whom was *Frederick W. Huxford*, for the appellant (defendant).

*Homer S. Cummings* and *John J. Cullinan*, for the appellee (plaintiff).

PRENTICE, J.   The court included in its judgment in favor of the plaintiff husband a sum for his loss of *consortium*.   The right of *consortium* has had modern definition which limits it to a right growing out of the marriage relation, which the husband and wife have, respectively, to the society, companionship and affection of each other in their life together.   By this definition it is clearly intended to distinguish the right to *consortium* from that to services.   *Feneff* v. *New York Central & H. R. R. Co.*, 203 Mass. 278, 89 N. E. 436. Such was not the common-law use of the term.   In its original application it was used to designate a right which the law recognized in a husband, growing out of the marital union, to have performance by the wife of all those duties and obligations in respect to him which she took upon herself when she entered into it.   The meaning of the term as thus employed has remained its common-law meaning.   As thus employed, it includes the right to society, companionship and conjugal affection, and the law has from early days recognized the right of a husband to have recovery in damages for the loss of these incidents of the marital relation when he was deprived of them by certain acts regarded as necessarily destructive of them.   *Wilton* v. *Webster*, 7 Car.

& P. 198, 201; *Weedon* v. *Timbrell*, 5 T. R. 357, 360. Acts, on the other hand, whose natural consequence was the diminution or impairment of these incidents, and whose necessary consequence was not their loss, were not regarded as furnishing a right of action. *Lellis* v. *Lambert*, 24 Ont. App. 653, 654; *Houghton* v. *Rice*, 174 Mass. 366, 368, 54 N. E. 843.

But the right of *consortium* was by no means fully expressed in the terms of society, companionship and conjugal affection. The right to service was a prominent factor in it, and in respect to certain kinds of injuries, without doubt, the predominant factor. If we go back to the times when it took on its meaning, the conditions were that the wife was socially and legally regarded as the husband's inferior, as having her existence merged into that of her husband, and as owing to him the duty, which he was entitled to command, of serving and ministering to him in all the relations of domestic life. Her emancipation of recent years was centuries in the future. She was looked upon as the servant of and ministrant to her liege lord, to whom and to whose interests she was, by virtue of her marriage vow, devoted. He was entitled to her services, and these she was expected to render in the care of his home, in the rearing of his children, and in attending upon his wants. The solace and comfort which she was expected to bestow were in part at least those which would naturally flow from her rendition of this service, and her society, companionship and affection as a faithful and loving wife would naturally have their fruition in a faithful performance of it.

The services which the law had in contemplation were not so much those which resulted in wages earned, or from the mere performance of labor, as those which found their expression at the domestic fireside, and in all manner of aid, assistance and helpfulness in all the

relations of domestic life. "The word service has come to us in this connection from the times in which the action originated, and it implies whatever aid, assistance, comfort and society the wife would be expected to render or bestow upon her husband, under the circumstances and in the conditions in which they may be placed, whatever those may be." 1 Cooley on Torts (3d Ed.) 471.

The law's conception of the claim which the husband had upon the wife, and of his right growing out of the marital relation which entered into the meaning of the word *consortium* to express that right as the subject of invasion by wrong-doing, was thus one which embraced the right to service as a distinct factor, and there was no attempt to disassociate the right to society, companionship and affection from it. All these rights were bound together in social and legal contemplation, and they were bound together in the law's expression of them. In some cases, as where the wrong was criminal conversation, the loss of conjugal society and affection might stand out and be emphasized as the pre-eminent and possibly sole basis of recovery. In others, as in actions growing out of personal injuries, the loss of service would present itself as the predominant factor. The law has, however, never been solicitious to distinguish between these different elements of damage or to separate them, and there will be found few cases indeed, and we think no one of the earlier ones, in which the husband's loss was regarded as one into which the element of service did not enter. The pleadings in the early cases, and the language of the opinions in them, clearly show that loss of services as well as society and affection were included in the legal meaning of the loss of *consortium*. 1 Chitty on Pleading, 49; 2 id. 306; *Guy* v. *Lusy*, 2 Rol. R. 51; *Russell* v. *Corne*, 2 Ld. Raym. 1031; *Guy* v. *Livesey*, 2 Cro. Jac.

501; *Hyde* v. *Scyffor,* 2 Cro. Jac. 538. The older and more recent text writers unite in stating that in an action *per quod consortium amisit* recovery might properly be had for the husband's loss, whether it partook of the one character or the other. 1 Bacon's Abridgement, 502; Reeve on Domestic Relations, 63; Tiffany on Persons & Domestic Relations (2d Ed.) 77; 2 Kinkead on Torts, § 449.

It does not clearly appear whether the trial court in the present case used the term, in defining the basis upon which recovery was allowed, in the narrow sense of the definition first stated, or in the more correct and comprehensive sense. That is, however, a matter of small present importance. But it is important, in an examination of the development of the law relating to the general subject under consideration, to bear in mind that within the legal meaning of *consortium* are embraced as well those incidents of the marital relation which center about service, and thus possess a practical and material value to a husband, as those which are associated with what, for want of a better term, we may designate as its sentimental side, and are expressed in the terms of affection, solace, comfort, companionship, and society unrelated to service.

The common law has long recognized the right of a husband to recover damages for his loss of *consortium* in the comprehensive sense of that word, as for an injury to him in respect to his relative rights, when that loss was the consequence of certain wrongful acts done to, or in relation to, his wife. Blackstone in his Commentaries (Vol. 3, p. 139) states the law, as it had been established by the courts at the time when he wrote, as follows: "Injuries that may be offered to a person, considered as a husband, are principally three: abduction, or taking away a man's wife; adultery, or criminal conversation with her; and beating or other-

wise abusing her. . . . The third injury is that of beating a man's wife, or otherwise ill-using her; for which, if it be a common assault, battery or imprisonment, the law gives the usual remedy to recover damages, by action of trespass *vi et armis*, which must be brought in the name of the husband and wife jointly; but if the beating or other maltreatment be very enormous, so that thereby the husband is deprived for any time of the company and assistance of his wife, the law then gives him a separate remedy by an action of trespass in the nature of an action on the case for this ill-usage, *per quod consortium amisit . . .*; in which he shall recover a satisfaction in damages." Similar statements of the law are made by later writers. 1 Bacon's Abridgement, 502; 1 Chitty on Pleading, 49.

The first two of the grounds of action enumerated by Blackstone present the same general aspects, in that the wrong is one which is done directly and primarily to the husband, and one which strikes at the very foundation of the conjugal relation, and is necessarily destructive of all of its benefits. The reason of the rule, from the standpoint of the common law, that these wrongs, having this consequence, should give to the husband a right of action against the offender for a recovery measured by the loss to him of all those benefits including service and society, is apparent.

An action, however, could not, until recent years, be maintained in the wife's favor under reversed conditions. The common-law reasons for this are found in the unity of persons created by a marriage, the superior position of the husband in the eye of the law, the status of married women under the law, and the fact that recovery in such an action would inure to the benefit of the husband, a partner in the wrong, as a chose in action reduced to possession. "By marriage, the husband and wife are one person in law; that is, the very being or

legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband; under whose . . . protection and cover she performs everything." 1 Blackstone's Commentaries, 442. "We may observe that in these relative injuries, notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself, or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for this may be this: that the inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury." 3 Blackstone's Commentaries, 143.

In most of the States of this country alienation of affections, although unaccompanied by criminal conversation or enticing or harboring, has come to be recognized as a wrong to the husband belonging to the same class as the two just considered, both as to its necessary consequences in the destruction of the conjugal relation, and also, for that reason, in its legal consequence as furnishing the husband a ground for an action to recover for the loss of *consortium*, whether that loss be that of services or society, or both. *Foot* v. *Card*, 58 Conn. 1, 18 Atl. 1027; *Nolin* v. *Pearson*, 191 Mass. 283, 77 N. E. 890; *Fratini* v. *Caslini*, 66 Vt. 273, 29 Atl. 252; *Cross* v. *Grant*, 62 N. H. 675. The courts which recognize the alienation of a wife's affections as a wrong to the husband justifying an action, view it in the same light as did the common law abduction and adultery, and treat it in the same way. The logic of this is apparent.

Blackstone's third class includes only cases in which personal injuries actionable in trespass are inflicted upon the wife. The situation presented in such cases,

as bearing upon an injury to the relative rights of a husband, is very different from that which results from a wrong falling within one of the other two classes. The former are not only not destructive of the marital relation, but they have no tendency to even impair it. They are not calculated to change the feelings of the parties toward each other, to diminish their love and affection, to lessen the sweetness of their companionship, or to weaken the desire to do all that is incumbent upon the parties to a marital union. Their result is to impair physical capacity, and, in so far as the husband is concerned, to diminish the ability of the wife to render to and bestow upon him that aid and help, and those ministrations which, in health, she would be able to render and bestow. The disposition of mind remains unchanged, but the injuries received set limitations upon the ability to perform. The consequences to the husband are only those which flow from an impairment of physical capacity in the wife, and in no manner from a change of the mental and moral attitude, which means a destruction of the marital relation in all respects save form.

Since Blackstone's day there has been an extension of the common-law right of a husband to recover for loss of *consortium* to cases in which the personal injury sustained by the wife was the result of negligence, so that it is generally held that it makes no difference whether the injury is intentionally or negligently inflicted. 1 Cooley on Torts (3d Ed.) 469, and cases cited in note.

It is not difficult to understand how this latter extension came about. From a modern point of view the classification, early made, of batteries with abduction and criminal conversation, as wrongs furnishing a husband a right of action against the wrongdoer for loss of *consortium,* is less apparent, since there is no clear con-

nection between the two classes of wrongs, and since
in the latter class the loss of society, companionship and
affection does not appear to be present as a natural
consequence of the wrong.    Loss or impairment of
conjugal affection is certainly not a natural result of
physical injuries suffered by one of the parties to a
marital union.    Neither is there to be expected an im-
pairment in other ways of the conjugal relation viewed
from its sentimental, as distinguished from its practical
side.    It is scarcely to be imagined that the law in the
early stages of its development had any notion of as-
suming that a physical injury to a wife would be at-
tended with such consequences as these, or of justifying
an inquiry whether, in the given case, such consequences
had actually arisen, or of attempting to measure the
pecuniary value of such consequences and awarding
that measure to the husband.

There is, however, a real connection between the
natural results of the two classes of wrongs, in that
they alike involve a loss of certain of the benefits which
attach to the marital relation.    It may not be the same
benefit, or the same degree of that benefit, in one case
as in the other.    But that benefit is one which is em-
braced within the comprehensive term *consortium*.    It
may in one case be a benefit, whose essence is service,
and in another, one which flows chiefly or entirely from
the purely personal relation, and is founded in affection
and mutual regard.    But in either event it is a loss which
lies in the same general field.

There is another common ground in that, as we have
seen, service, in the early common-law conception, was
a prominent feature of a husband's marital rights, and
one around which centered others which impress the
modern mind as being limited to the sentimental, rather
than extended to embrace the useful and practical, as-
pects of marriage.    There can be little doubt that it

was these useful and practical incidents, embodied in
the idea of service, and the capacity to render in a use-
ful and helpful way aid, assistance and co-operation,
which the law originally regarded, and has continued
to regard, as pre-eminently the foundation of recovery
in personal injury cases where there was loss or impair-
ment thereof.    It was these which had their natural
origin in physical impairment, and it was, therefore,
necessarily these which the law must have had in con-
templation when the right to recover in personal injury
cases as for an injury to the husband was recognized.
But that fact furnishes no reason why the loss should
not have been treated as that of *consortium.*    The con-
fusion which has apparently grown up has arisen not
from the use of this term, but from the repetition of
familiar defining phrases without proper discrimination
between their different phases as appropriate to differ-
ing conditions.

An examination of the multitude of cases in which
recovery by the husband for loss of *consortium* result-
ing from personal injuries has been approved, and
especially the earlier and better considered of them,
discloses that the loss of service and the capacity for
service resulting from diminished or destroyed ability
to serve in useful ways have been the real basis of re-
covery.    Search for a case of that character in which it
has been held, either directly or by reasonable implica-
tion, that a husband could recover for the simple rea-
son that conjugal affection, society or companionship
had been rendered less agreeable or satisfactory to the
husband by reason of an injury to his wife, will, we
think, bear small fruit.    There are, indeed, personal
injury cases in which the familiar general language
descriptive of *consortium,* and including all its varied
elements pertinent to one situation or another, is re-
peated.    Color is, doubtless, thus given to the proposi-

tion that the basis of recovery in the one class of cases is in its practical application the same as in the other. But these will be found to be hasty expressions borrowed from one set of conditions for use in another, without thought as to whether all the enumerated elements had direct pertinence to the situation under consideration.

It is quite inconceivable that the law which has set its face steadfastly against a recovery by a husband where the conjugal relation had been disturbed by the intrusion of an admirer upon the society, attentions and regard of the wife, so that the companionship and marital relations of the married pair had been rendered less pleasant and agreeable to the husband, and the law which has been reluctant to recognize a right of action where the affections of the wife had been alienated, should early concede the right of recovery where there had been only such impairment of conjugal relations, pure and simple, as would result from a diminution of physical powers due to personal disability. *Lellis* v. *Lambert*, 24 Ont. App. 653, 654; *Houghton* v. *Rice*, 174 Mass. 366, 368, 54 N. E. 843.

Such has been the history of the development of the common law in relation to the matter in question, and such the state of the law prior to the comparatively recent statutes regulating the status and rights of married women. Counsel for the defendant contend that the changes thus accomplished in this jurisdiction remove all foundation for the common-law principle, in so far as it justifies a recovery for the loss of *consortium*, in any sense of that term, resulting from personal injuries inflicted upon a wife. As incidental to their argument they assert that these changes have placed the two parties to a marriage in equal positions in respect to the right of recovery for a loss of service, society or companionship, as a result of personal injuries to the

other, so that, if one of them is entitled to recover, the other, under reversed conditions, must be.

In *Foot* v. *Card*, 58 Conn. 1, 18 Atl. 1027, a case which grew out of a marriage contracted before the statute, Public Acts of 1877, p. 211, Chap. CXIV, was enacted, we said that, as the parties to a marriage stood upon an equality in so far as their right to its incidents of conjugal society and affection were concerned, we were unable to discover why the right of a wife to sue for the loss of those incidents as the result of an alienation of affections should not be the same as that of the husband under like conditions.

We now have a somewhat different question presented, and it is presented under conditions which have been materially affected by the legislation of 1877. We are not now dealing with the sentimental side of the conjugal relation. If we were, the decision in *Foot* v. *Card*, 58 Conn. 1, 18 Atl. 1027, would furnish authority for the preliminary proposition that a husband now stands before the law in the same position as to a right of action growing out of a loss within that field. We are, however, concerned with the more material side of the marital union,—with the side which represents practical results expressed in the terms of service.

In *Mathewson* v. *Mathewson*, 79 Conn. 23, 32, 35, 63 Atl. 285, we had occasion to review at length the changes which had been wrought in the legal status of married women by comparatively recent legislation in this State culminating in the Act of 1877, and to note the marked character of the results which must attend them. In this connection we observed that this legislation had removed the foundation of the former legal status, namely, the unity in the husband of his own and his wife's legal identity and capacity to own property, and laid a new foundation, namely, the equality of husband and wife in legal identity and capacity of owning

property. We said that this was in the nature of funda-mental legislation, involving all the results necessarily flowing from the principle established, that in enacting it the State adopted a fundamental change of public policy, and that the new legal status must be adminis-tered in accordance with that policy.

That case immediately concerned contractual rights. But its language is equally appropriate to all the rights of married women who come under its application. Her identity is no longer merged in that of her husband. She is recognized as having a complete legal entity of her own, with rights of her own, and enforceable as her own. She is no longer looked upon as the servant of a master to whom she owes the duties of a servant. Her place before the law is one of equal dignity with that of her husband. She owes duties to her husband; he in like manner owes similar ones to her. These duties include those of both helpfulness and love. He has no monopoly of rights, and she has come into a position in which her rights are recognized, and will be en-forced. Under such conditions the conclusion is ir-resistible that whatever right the one party to a mar-riage relation should have to recover for the loss of whatever incidents of that relation fall within the field of either service or society and companionship, should likewise be recognized in the other.

The question then remains whether the law shall say that each spouse is entitled to maintain an action for loss of *consortium,* when the other sustains at the hands of a third person personal injuries, not accidental, re-sulting in physical impairment,—or that neither can do so. As the result of the legal status created for those who come under the operation of the Act of 1877, it seems clear that in an action to recover for personal injuries to a wife, compensation can be obtained for the resultant physical impairment and disability as fully

and to the same extent as in an action by a husband, where he is the person personally injured. This impairment and disability necessarily includes diminution or destruction of the capacity to serve or help in all practical ways. This being so, and the foundation of the husband's former recovery having been essentially grounded, as we have seen it was, in the impairment of the wife's capacity for service and usefulness, it follows that the wife's right of recovery must be regarded as exclusive, except, of course, as to expenses which the husband may have been called upon to incur by reason of the wife's injury. The right to recover these rests upon a different basis.

Some courts, in their efforts to justify the ancient rule as applied to modern conditions, have attempted to draw a distinction between a wife's capacity for productive service in employment or business, and capacity for service within the domain of domestic helpfulness and assistance, permitting recovery by the wife for the former and by the husband for the latter. This distinction carries legal refinement too far into the region of the impractical, in an attempt to save a principle which does not belong to conditions which now exist in this State at least, and rests upon grounds by no means satisfactory.

If it be said that this reasoning ignores the fact that a husband may, as the result of the disability of his wife, be injured, in that her society and companionship is thereby rendered less agreeable and satisfactory and his married life less pleasant, and that the court ought at least to discover if such is not the case, and award him compensation for whatever he may have suffered in that way, the answer is that the law has never undertaken any such investigations, has never countenanced any attempt to measure pecuniarily such a loss, and, as we have seen, has never recognized in the mere impair-

ment of conjugal relations, pure and simple, the foundation of a right of action. *Feneff* v. *New York Central & H. R. R. Co.*, 203 Mass. 278, 89 N. E. 436.

We are of the opinion that the reason for the former rule no longer exists, and that it should cease to have recognition. "Where the reason of the law fails, the law ceases to operate." *Mathewson* v. *Mathewson*, 79 Conn. 23, 26, 63 Atl. 285. The court was, therefore, in error in allowing the plaintiff the sum of $300, or any sum, for loss of *consortium*, and it would not matter whether the allowance was for loss of what is termed service or society, or both.

See *Bolger* v. *Boston Elevated Ry. Co.*, 205 Mass. 420, 91 N. E. 389, where the same conclusion is reached.

There is error in part, the judgment is set aside, and the cause remanded with direction to the Superior Court to render a judgment for the amount of $1,418 damages.

In this opinion the other judges concurred.