Bernard Tomson, J.
The plaintiffs, having sustained thei? burden as to the defendants’ negligence and their own freedom from contributory negligence, are entitled to recover.
Gloria Watkins, as a result of the accident, sustained a lumbo sacral sprain, which, in a large part, incapacitated her for several weeks after .the accident, caused her intermittent pain since that time, and may continue to do so, although a competent orthopedist who testified for the plaintiff stated that he could not say how long this condition would persist.
The plaintiff, James Watkins, her husband, has proven medical expenses of $105, and seeks the sum of $500 for such expenses and the loss of “ consortium and services of his said wife ”. This area of damages is often expressed in terms of circumlocutions, euphemisms and generalities. Typical are the defimtions found in Black’s Law Dictionary (4th ed., 1951). “ Consortium ” is defined as follows: “ Conjugal fellowship of husband and wife, and the right of each to the company, co-operation, affection, and aid of the other in every conjugal relation.”
1 ‘ Conjugal ’ ’ is defined as follows: “Of or belonging to marriage or the married state; suitable or appropriate to the married state or to married persons; matrimonial; connubial.”
The word ‘ ‘ connubial ’ ’ is not defined.
Under the heading of ‘ ‘ Service * * * Domestic Relations,” is found the following: “ The 1 services of a wife, for the loss of which, occasioned by an injury to the wife, the husband may recover in an action against the tort-feasor, include whatever of aid, assistance, comfort and society the wife would be expected to render to or bestow upon her husband in the circumstances in which they were situated.” (Similar definitions may be found in Words and Phrases [Perm, ed., vol. 8-A, p. 360 et seq.] and in Ann. 21 A. L. R. 1517 et seq. and Ann. 133 A. L. R. 1156 et seq.)
In general, services and consortium would appear to include not only such services as might be rendered by hired hands, but would also include activities, the diminution of which are much more difficult to evaluate. A wife’s value is lyrically described in Denver Cons. Tramway Co. v. Riley (14 Col. App. 132, 139-140) : “ The companionship and society of a wife are not articles of commerce. They cannot be weighed or measured; they are not bought and .sold, and no expert is competent to testify to their value. The consideration upon which they are bestowed is not pecuniary. Yet the husband is entitled to compensation in money for their loss, and the amount of that compensation is to be determined by the jury, not from evidence of value, but from their own observation, experience and knowledge, con *452 scientiously applied to the facts and circumstances of the case. So also in relation to the services of the wife. The wife does not occupy the position of a servant, and her services to her husband are not those of a servant. She makes his home cheerful and inviting, and ministers to his happiness in a multitude of ways outside of the drudgery of household labor. All the work of the house may be done by hired employees, and her services still give character to the home. They are not rendered in accordance with set rules; they are not repeated in regular order from day to day; they have their source in the thoughtfulness of the wife, and her regard for her husband, and no witness is qualified to define them, or reduce them to a list, or say what they are worth, so that their value must also be estimated by the jury.”
Some of the cases, less poetic, include as an element of damage under the heading “consortium”, interference with sexual relations. (See Murray v. Murray, 30 N. M. 557; Tunget v. Cook, 94 S. W. 2d 921, 927 [Mo. App.]; Guevin v. Manchester St. Ry., 78 N. H. 289; L. R. A. 1917C, 410; Baldwin v. Kansas City Rys. Co., 231 S. W. 280, 282 [Mo.]; Albert v. McGrath, 278 F. 2d 16, 17; Dini v. Naiditch, 20 Ill. 2d 406. See, also, 3 Am. Jur., Proof of Facts, p. 766 et seq.)
In support of his action for loss of services and consortium, the plaintiff, James A. Watkins, testified in part as follows:
“ Q. I’m talking about after the accident. A. After the accident? Well, I had the pleasure of washing diapers, rinsing them, I mean and of course, I only did this for about two weeks and between the larger girl and myself, we kept the place clean and I ran after the little fellow.
Q. Who did the shopping? A. I did all the shopping for the first week. The second week I did the heavy shopping. She might have came out for miscellaneous things, as previously stated and I did most of the heavy shopping for the better pant of the month. I don’t say it was three weeks or four weeks, but I did most of it until she was able to get around.
* * e
Q. Now, over the following week or two after the accident, did you have occasion or anytime that you were home, to view the general physieial condition of your wife?
* «- $
A. Yes, I did observe it.
Q. Will you tell the Court what if anything you observed? A. She moved around with great difficulty; appeared to be in pain; when she walked down the steps she held on to the rail and usually she runs down the steps; she had no contact with picking up the children or diapering the babies or changing them. I did all of that; when my niece came home she did it and I went to work.
Q. Have you bad occasion to see the normal household activities between the period between two weeks after the accident and the present time? A. Yes, I have.
*453 Q. During .the interim period, two weeks after the accident and today, you stated that you have been able to observe, from time to time, the normal activities of the household; what have you noticed? A. I have noticed that immediately after the .two weeks, two weeks after the accident, her difficulty as far as walking and moving and d'oing the general housework gradually diminished. However, during the period two weeks after the accident as today, she can’t sit long on a hard chair without fidgeting around, she complains intermittently about her back, it prevents her from performing certain household functions that a husband would normally expect.”
This court is conscious of Kronenbitter v. Washburn Wire Co. (4 N Y 2d 524, 527) where the Court of Appeals, in denying the wife an action for loss of consortium, discussed the husband’s right to damage: ‘ ‘ The argument that equality of the sexes calls for a change overlooks that the husband’s right to damages for loss of consortium is based on outworn theory. It derives from the time when the wife was regarded in law in some respects as her husband’s chattel. He was allowed damages for injury to her in much the same manner that he would have been allowed damages for the loss or injury of one of his domestic animals. In Law and Contemporary Problems (Vol. 18, pp. 219, 229), this argument of appellant is answered by Professor Jaffe: ‘ More persuasive is the argument that since the husband has an action, so should the wife. But his action is a fossil from an earlier era. It is one of a group of archaic actions based on the notion that the pater familias was alone competent to sue for losses suffered by the family unit. The husband was entitled to his wife’s service and this included the sentimental elements of her person and presence. The law did not seek to set a value on consortium as such (citing Marri v. Stamford St. R. R. Co., 84 Conn. 9). "When to the husband’s action, there is now added the wife’s action for negligent injuries (which being emancipated she is entitled to bring) there is a danger of duplicating elements of damage. Ingenious efforts must be made to disentangle from the wife’s recovery .the constituents of the husband’s cause of action. Indeed, the emancipation argues for the restriction or abolition of these actions rather than their extension. ’ ”
It would seem that the amount of $500 sought by the husband on the testimony here presented is modest indeed, even when the strictures on his right to damages, as stated by the Court of Appeals, are considered. Compare Goodrich v. U. S. Trucking Corp. (12 A D 2d 819) where the Appellate Division, Second Department, reduced a damage award in favor of the husband from $1,500 to $500, saying: ‘1 Except for a medical bill of $145, no evidence ivas adduced as to the medical expenses which he incurred for his wife or as to the loss of her services.” (Emphasis supplied.)
*454 In the instant case, such evidence was introduced.
Judgment is therefore directed to be entered, with costs and disbursements, in favor of Gloria Watkins in the sum of $2,000; James Watkins, in the sum of $500, and Butler School Transportation Oorp. in the sum of $70.