[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiffs bring this action in three counts. The first count alleges malpractice in the delivery of the infant, the minor plaintiff Taylor Manville. The second count sets forth a claim by the mother Colette Manville for loss of consortium with the child Taylor, because of the severe brain damage, neurological disorders, cerebral palsy, and blindness claimed to be caused by the defendant's negligence during the labor and ensuing birth of the child. The third count, captioned Bystander Emotional Distress claims that the mother Colette Manville suffered emotional distress at the delivery of her son and as a result of her observation of Taylor's condition. The defendants' CT Page 4592 move to strike the second and the third count of the complaint.
The second count of the complaint alleges on behalf of the mother Collette loss of consortium by virtue of the claim that she has been deprived of the joy, love and affection of her child Taylor Manville. Although it is captioned loss of parental consortium, but is noted in the plaintiff's brief to be more properly called loss of filial consortium, it appears that the latter is the correct terminology. Whichever of the labels are most appropriate is immaterial, as it is clear that this is a claim by the parent for loss of the benefits of "consortium" afforded by a child to his or her parent.
As is noted in the briefs there is a division of authority among Superior Court decisions as to whether the law recognizes a claim of a parent for loss of the consortium afforded to a parent by a child. There is a division of authority among Superior Court decisions on this subject, as well as the allied subject of claims for loss of consortium by the child caused by loss of consortium afforded by a parent to a child.
Although it may appear at first glance that a cause of action for loss of consortium is of recent origin, by virtue of the decision of our Supreme Court in Hopson v. St. Mary's Hospital,176 Conn. 485 (1979), such is not the case. The right of consortium did exist at common law. See Marri v. Stamford StreetRailroad Co., 84 Conn. 9 (1911). Such a right existed out of the relationship of marriage. But the right existed only in the husband. ". . . it includes the right to society, companionship and conjugal affection, and the law has from early days recognized the right of a husband to have recovery in damages for the loss of these incidents of the marital relation when he was deprived of them by certain acts regarded as necessarily destructive of them." Marri, supra, p. 11 (emphasis added).
"She was looked upon as a servant of and ministrant to her leige lord, to whom and to whose, interest she was, by virtue of her marriage vow, devoted. He was entitled to her services, and these she was expected to render in the care of his, home in the rearing of his children, and in attending upon his wants."Marri supra, p. 12 (emphasis added).
Viewed in that archaic sense of history the wife was considered to CT Page 4593 be little different than an instrumentally furnishing services to the husband and to meet the needs of his family. In that sense the loss to him would somewhat equate to the loss of a chattel, a loss which was traditionally recognized at common law.
The Marri court, supra, then rejected the concept of consortium because statutory changes had in fact granted to women a status which no longer justified married women as being servants. "She is no longer looked upon as the servant of a master to whom she owes the duty of a servant." Marri, supra
p. 22.
The Marri court, though recognizing the right of consortium in each of the parties arising out of the relationship of marriage, (the status of women being enhanced or equalized by statute), that regardless thereof the law would not recognize or countenance an action by either of them for loss of consortium. Marri, supra
pp. 22, 23, 24.
In 1979 our Supreme Court revisited the Mauri case, supra. See Hopson v. St. Mary's Hospital, 176 Conn. 485 (1979). In recognizing a cause of action by each of the spouses the Supreme Court merely recognized that a cause of action which had been recognized by the common law as concerns the husband, being now mutual should allow the wife to bring an action for loss to her of her side of the right to marital consortium, which right had in fact been identified as a bilateral right by Marri, supra, p. 22.
The right to consortium is and has always been a right unique to married persons, arising out of, and a natural adjunct, of the relationship of marriage. The right is unique and comprehensive, and is best illustrated by the Supreme Court's articulation of some of its many components.
 For example, while a claim for loss of consortium could include as elements of damages loss of companionship, society, affection, sexual relations and moral support, the recovery in a particular case could be limited to the elements established in that case by means of instructions from the court describing to the jury those damages which are recoverable and those which are not.
Hopson v. St. Mary's Hospital,
CT Page 4594supra p. 494.
It is not claimed by the plaintiff, nor can it be rationally claimed, that a parent has any right to insist upon, or to claim from a child such intimate and mutual rights as are the comprehensive rights of "consortium". Neither modern society nor the common law have remotely recognized such a right of consortium in a parent.
The Supreme Court has clearly delineated the scope of the right.
 An action for loss of consortium cannot be maintained unless the plaintiff was married to the injured person at the time of the actionable conduct.
Gurliacci v. Mayer, 218 Conn. 531, 564 (1991)
 The right to consortium is said to arise out of the civil contract of marriage, and does not extend to the parent-child relationship.
Mahoney v. Lensink 17 Conn. App. 130, 141 (1988).
It is further noted that the legislature has not seen fit to enact legislation to apply the concept of actionable loss to the parent child relationship, although the legislature did extend the judicially determined mutual cause of action of spouses for loss of consortium to wrongful death actions. See General statutes §§ 52-555a, 52-555b, and 52-555c. Such extension is naturally consistent with a recognition of the now common law cause of action for loss of consortium amongst spouses, but furnishes no indication that the legislature intended to create a similar or partially analogous cause of action for persons other than spouses.
The second count of the complaint seeks damages for loss of filial consortium. Neither the common law nor statute grants to a parent the comprehensive right of "consortium" with a child. The terminology "consortium" may itself be a misnomer. What is sought herein is to assert a cause of action for loss of what is in fact a different and less comprehensive right, the right to the companionship and society of one's child, which loss cannot of course be dismissed as inconsequential by any thinking person. CT Page 4595 Yet, the law does not recognize the loss or diminution of that right as actionable. The trial court cannot create a cause of action where no such cause of action exists at law.
The motion to strike the second count of the complaint is granted.
 II.
The third count of the complaint is captioned "Bystander Emotional Distress". This count seeks compensation for "emotional distress at the delivery of her son and as a result of her observation of Taylor's condition, her awareness of Taylor's prognosis of permanent and total disability, and her fears for Taylor's future."
The Supreme Court, in Maloney v. Conroy, 208 Conn. 392 (1988), clearly determined that one who is a bystander to medical malpractice may not recover for emotional distress. Maloney,supra, p. 393. This proposition is applicable even under circumstances where the bystander is a close relative of the victim. The plaintiff in that case was the daughter of the victim.
This court is however in agreement with Superior Court decisions which have held that a mother is not a mere bystander at the birth of her own child. The very term "delivery" presupposes that the mother is an active participant in the birthing of a child. To hold otherwise would be to reject the entire human experience, everywhere and at all times.
Because the plaintiff is not a mere bystander the plaintiff is not entitled to recovery by virtue of a status of "bystander" under the concept of bystander emotional distress.
This does not however end the inquiry. The plaintiff claims, in paragraph 19, that "The defendant knew or should have known that said negligence, as set forth above, involved an unreasonable risk of causing emotional distress, and that, such distress, if caused, might result in illness or bodily harm."
The plaintiff Colette Manville is not a mere bystander in the birth of the child. She is a participant in the birthing process. It is obvious that a physician owes to a birthing mother a duty of reasonable care to render reasonable medical services throughout CT Page 4596 the course of birthing.
Paragraph 19 of the complaint alleges factors which give rise to a cause of action for unintentional (negligent) infliction of emotional distress.
 . . . the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that such distress, if caused, might result in illness or bodily harm.
Maloney v. Conroy, 219 Conn. 314, 325 (1991) Montinieriv. Southern New England Telephone Co., 175 Conn. 337,345 (1978)
In causes of action such as this, ensuing bodily injury to the claimant is not essential, Montinieri, supra pp. 344, 345. Although case law does not contain a clear delineation as to whether there is a level whereby emotional discomfort is required to be so as to be actionable, yet it is clear that recovery for resulting emotional damage need not be accompanied by physical injury. ". . . emotional distress should not depend upon proof of an ensuing bodily injury." Montinieri, supra, p. 345. "Whether the application of this rule will permit the plaintiff to recover for mental and bodily injury must await trial." Urban v. HartfordGas Co., 139 Conn. 301, 307 (1952).
Although captioned "Bystander Emotional Distress" the court determines that the third count of the complaint properly alleges a cause of action for negligent (unintentional) infliction of emotional distress.
The motion to strike the third count of the complaint is denied.
SULLIVAN, J.