COASTAL TANK LINES, INC. *v.* CANOLES
CANOLES *v.* COASTAL TANK LINES, INC.
(Two Appeals in One Record)

[No. 99, October Term, 1954.]

38

*Motion to dismiss appeal denied, per curiam, January 21, 1955.*

*Decided April 15, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON AND HAMMOND, JJ.

*R. Dorsey Watkins,* with whom were *Piper & Marbury* on the brief, for Coastal Tank Lines, Inc.

*R. Taylor McLean,* with whom was *Charles G. Page* on the brief, for Mattie A. Canoles.

*Charles G. Page,* with whom were *R. Taylor McLean* and *White, Page & Lentz* on the brief, for George D. Canoles.

HENDERSON, J., delivered the opinion of the Court.

These appeals are from a judgment in favor of George D. Canoles upon a jury's verdict of $19,500 in an action for personal injuries and property damages sustained by him in an automobile accident, and a judgment upon demurrer to a declaration filed by Mrs. Canoles for loss of consortium and special damages to her by reason of her husband's disabilities resulting from the accident. A motion to dismiss the first appeal was filed on the ground that the appellant failed to print all of the material testimony. We overruled that motion in a per curiam opinion. We deem it sufficient at this time to state that we thought there was room for a difference of opinion as to the necessity of printing the testimony which the appellee, Canoles, contended was improperly omitted, and that the omissions were not so patently indefensible as to require the drastic measure of dismissing the appeal. Cf. *Sawyer v. Novak,* 206 Md. 80, 83-84. In view of our conclusion on the merits it is unnecessary to consider separately the award of costs for printing the omitted material.

The accident occurred on the York Road in Baltimore County on October 9, 1952, when the Ford sedan owned and operated by George D. Canoles was struck in the rear by the right front of appellant's tractor, pulling an empty trailer. The only eyewitnesses were the drivers of the respective vehicles. The appellant, Coastal, contends that there was no legally sufficient evidence of primary negligence, and that the appellee, Canoles, was guilty of contributory negligence as a matter of law. In the alternative, it is contended that there was error in the court's instructions as to contributory negligence and in connection with the claim of permanent injuries.

The physical evidence in the case, based on an investigation by a county police officer, is undisputed. Both vehicles were south-bound in a 50-mile speed zone on a straight, dry road with good visibility over a considerable distance. The accident occurred about three hundred feet south of the intersection of York Road and Belfast Road. The paved portion of York Road at that point is twenty-one feet in width, with a painted center line. Skid marks ninety-four feet in length indicated that the tractor-trailer was in the center of the south-bound lane when its brakes were applied, with its left wheels two feet to the right of the center line. As the tractor was six and one-half feet in width, its right wheels were presumably about two feet from the shoulder at the point of impact, which was marked by broken glass from the automobile taillight. This point was about four feet south from the beginning of the skid marks. A photograph showed the imprint of the spare tire, attached to the rear and in the center of the overtaken vehicle, upon the right half of the tractor's front fender. This indicated that the automobile must have been somewhat further to the right at the moment of impact. The automobile was thrown off the road diagonally to the right, and came to rest on its side about one hundred and twenty-two feet from the point of impact.

Mr. Canoles testified that he was driving at about 25 miles per hour when he saw in his rear view mirror a

tractor-trailer coming up behind and another truck coming fast from the opposite direction. When the tractor was twenty-five or thirty feet behind, he pulled off the road to allow it to go through, for it was coming up fast and "it looked like he was going to hit me." He was somewhere around two feet off of the hard surface when the crash occurred. "* * * both of my right wheels was around about two feet over on the shoulder, off the hard surface. * * * My car was going further off the road all the time. If I had a couple of split seconds more I would have it all off the road but I didn't have that much time." He also testified that there was "plenty of room" for the tractor to pass; "the whole center of the road was there".

Mr. Smith, the driver of the tractor-trailer, testified that the automobile pulled entirely off the road ahead of him, all four wheels on the gravel. He accelerated his vehicle and "gave it the gas", when the automobile suddenly pulled back on the road, blocking the lane. He could not pull to the left, because of·the truck coming in the opposite direction, which was about one hundred feet away and "really riding". He hit the automobile on its left rear corner.

The appellant, Coastal, contends that the testimony of of the plaintiff is so inconsistent with the physical facts as to be incredible, and hence it should be rejected altogether. We think, however, that in important particulars it is consistent with the physical evidence. The fact that the brakes of the tractor-trailer were not applied, with sufficient force to leave skid marks, until it was four feet from the point of impact, indicates beyond question that the driver was unwilling to accommodate his speed to that of the overtaken vehicle, and put himself in the position where passing was the only alternative. Perhaps he underestimated the speed of the approaching truck. The duty to slow down and not to attempt to pass, until the road is clear and it is safe to do so, rests upon the overtaking vehicle. Code (1951), Art. 66½, secs. 184, 186. There was no evidence that

Smith blew his horn or gave a passing signal. Again, the fact that the automobile was impelled diagonally to the right, would seem more consistent with the plaintiff's testimony that he was trying to pull off the road, at a slight angle to the right, than the testimony of Smith that the automobile was pulling back onto the road, in which case the angle would probably have been to the left.

It is true that the physical facts are not wholly consistent with the plaintiff's testimony that he pulled off the road and that there was room for the tractor to pass. This was later qualified by his statement that only his right wheels were off the road. The imprint of the spare tire of the automobile upon the right half of the tractor's front bumper, and the skid marks of the tractor-trailer in the center of the south-bound lane, demonstrate that the automobile, while somewhat to the right, was not entirely off the road. The blow was on the center of the rear of the automobile and not on its left corner, as Mr. Smith testified. Mr. Canoles may have been mistaken in saying that his right wheels were off the hard surface, but this error of detail would not discredit his explanation of what happened. Cf. *York Motor Express Co. v. State*, 195 Md. 525, 534. Whether there was room for the tractor to pass in the center would largely depend upon the position of the approaching truck with reference to the center line. The case turns, in its factual aspects, upon whether the jury chose to believe the plaintiff's theory that he was trying to pull off the road in the emergency created by the tractor's failure to slow down, or the defendant's theory that the plaintiff had pulled entirely off the road, inviting him to pass, and then, at the last moment, pulled back and blocked the lane when it was too late for the driver to stop. The determination of liability under such circumstances is peculiarly one for the jury, both on the issue of primary negligence and contributory negligence.

The appellant, Coastal, also complains of the failure of the trial court to charge the jury, in addition to the

usual charge as to contributory negligence, that it the jury should find that the plaintiff was aware of the risk of collision and failed to use reasonable care to avoid it by pulling entirely off the road, the verdict should be for the defendant. The short answer to this contention is that there was no evidence to support such an instruction. It is, of course, inconsistent with the defendant's theory of the case, and on the plaintiff's theory, the testimony was that the plaintiff did not have time to pull off after he realized the danger. Time and a reasonable opportunity to avoid an imminent danger is an essential element here, as it is under the doctrine of last clear chance. Cf. *State v. B. & O. Railroad Company,* 196 Md. 459, 464, and *Shedlock v. Marshall,* 186 Md. 218, 236. We do not suggest that that doctrine has any application in the instant case, where the actions of both drivers were concurrent. The cases of *Oberfeld v. Eilers,* 171 Md. 332, and *Lange v. Affleck,* 160 Md. 695, are distinguishable on the ground that in each case it was admitted that the plaintiff might readily have avoided collision with a vehicle coming from the opposite direction by a slight change of course, after the danger was apparent to him. We are aware of no rule that an overtaken vehicle must give way to an overtaking one and clear the track beyond the usual duty to avoid collision when there is time and opportunity to do so.

The final contention on the first appeal is that the trial court erred in charging the jury as to permanent injuries, because the testimony of the attending physician, Dr. Saffell, was not properly admitted, and without his testimony there was no evidence of permanent injury. Dr. Saffell made, in all, eighty-eight professional calls on Mr. Canoles, and was qualified to express an opinion without any hypothetical question whatever. *Langenfelder v. Thompson,* 179 Md. 502, 507. The appellant, Coastal, contends that Dr. Saffell should not have been permitted to answer a hypothetical question put to him, because he did not hear all the testimony in the case, and especially testimony by the plaintiff, given in redi-

rect examination, as to an injury to his hip sustained in a previous accident in 1947, five years before the accident in the instant case. We find no merit in the contention. It is perfectly clear from the record that Dr. Saffell knew all about the hip injury and the previous accident, and took these matters into account. There was abundant testimony that the plaintiff had completely recovered from his previous injuries, so far as ability to perform manual labor was concerned. The fact that the question was based in part on personal knowledge of the patient and in part on a hypothesis, would not be fatal. Cf. *Mullan v. Hacker,* 187 Md. 261, 271, and *Marshall v. Sellers,* 188 Md. 508, 518. In any event, we cannot find that there was any prejudical error. The witness had heard the plaintiff describe his hip injury, and his testimony on redirect examination was simply cumulative. The case of *Penna. R. Co. v. Lord,* 159 Md. 518, 523, is distinguishable, because there the omitted testimony was not shown by the record.

The fact that Dr. Saffell was not willing to "say for certain how long anything like that will last", did not disqualify him, especially since he followed this by declaring that he was able to express an opinion as to the duration of disability. It is not certainty, but reasonable probability that is the test. See *Beth.-Spar. Pt. Shipyard v. Bishop,* 189 Md. 147, 156, and cases cited. Dr. Saffell testified in cross-examination that the arthritic condition, latent before the accident, might improve in its acute phase, "but, of course, Mr. Canoles is in his sixties; he has less likelihood to recover to a point he can do any gainful work", than after the first accident. Moreover, the condition of the plaintiff twenty months after the accident, as compared with his condition before, would support an inference that improvement would be slow and, considering his age, very unlikely. Cf. *Charlton Bros. Co. v. Garrettson,* 188 Md. 85, 94.

In the second appeal, the wife, Mattie A. Canoles, asserts a right to recover for loss of consortium and special damages by reason of her husband's incapacity

resulting from injuries sustained by him in an accident where she was not present. Consortium has been defined as including the "society, affection, assistance, and conjugal fellowship". *Miller v. Miller*, 165 Md. 425, 429. See also *Kurdle v. Brookmeyer*, 172 Md. 246, 256. The special damages claimed are for nursing care and farm labor performed and to be performed by her. The appellant concedes that a wife's right to recover for loss of consortium in an action such as this, was denied in the case of *Emerson v. Taylor*, 133 Md. 192 (1918). We are asked to reconsider and overrule that case, and to follow the case of *Hitaffer v. Argonne Co.*, 183 F. 2d 811 (1950) ; *certiorari denied,* 340 U. S. 852.

We find it unnecessary to review the authorities in detail. Most of them are set out in footnotes to the opinion of Judge Clark, speaking for the Court of Appeals of the District of Columbia, in the *Hitaffer* case, *supra,* and in a Note at 23 A. L. R. 2d 1378. It is conceded that prior to 1950 there was not a single decision in the English speaking world supporting the wife's right of recovery for loss of consortium in a negligence case. It may be noted, however, that the views of the legal commentators were generally to the contrary. See *Prosser, Torts,* Sec. 102, and articles therein cited. The position taken by the American Law Institute was squarely in line with the decided cases. See *Restatement, Torts,* § 695, and comment (a). The *Hitaffer* case was one of first impression in the District of Columbia. The court found the reasoning of the adjudicated cases unsatisfactory. It was argued that since either a husband or a wife has a right to recover for loss of consortium in an action for alienation of affection (Cf. *Wolf v. Frank,* 92 Md. 138), each should have a corresponding right in a negligence action. It may be noted that the action for alienation of affection has been abolished in Maryland. Code (1951), Art. 75C, sec. 2 (Ch. 1010, Acts of 1945). It has been held in a number of jurisdictions that a husband may recover for loss of consortium in a negligence action, and while not expressly adjudicated in Maryland,

this has been the accepted practice. However, the right has been denied in a number of well-considered decisions, thūs placing the parties on a matrimonial parity. See *Marri v. Stamford Street Railroad Co.*, 84 Conn. 9, 78 A. 582, and other cases cited in *Cooney v. Moomaw*, 109 F. Supp. 448 (D. C. Nebr., 1953). The District of Columbia court argued that the wife's right should be coextensive with that of the husband, and had been recognized as such in the alienation of affection cases subsequent to the adoption of the Married Women's Property Act, wherein her disability to sue in her own name was removed. It saw no reason for drawing a distinction between an intentional and a negligent interference, since the proximate results were the same in each case. It took the view that the element of consortium was separable from the claim for services or support, although conceding that there should be no duplication of recovery as to the latter. Finally, it disagreed with those cases holding that damages for loss of consortium were too remote or speculative, pointing out that this would also be true as to the husband's claim. In effect, it created a novel cause of action.

The *Hitaffer* case has not been followed by any court of last resort, although it was followed by an intermediate court in Georgia, *Brown v. Georgia-Tennessee Coaches*, 77 S. E. 2d 24 (Ga. App., 1953), also a case of first impression, and in *Cooney v. Moomaw, supra,* where a Federal District Court based its decision on a prediction as to what the Nebraska courts might decide. It has been universally repudiated by courts of last resort in a number of subsequent decisions. See *La Eace v. Cincinnatti, Newport & Covington Ry. Co.*, 249 S. W. 2d 534 (Ky., 1952); *Nelson v. A. M. Lockett & Co.*, 243 P. 2d 719 (Okla., 1952); *Burk v. Anderson*, 109 N. E. 2d 407 (Ind., 1952); *Ripley v. Ewell*, 61 So. 2d 420 (Fla., 1952); *Franzen v. Zimmerman*, 256 P. 2d 897 (Col., 1953) and *Weng v. Schleiger*, 273 P. 2d 356 (Col., 1954); *Ash v. S. S. Mullen, Inc.*, 261 P. 2d 118 (Wash., 1953); *Jeune v. Del E. Webb Const. Co.*, 269 P. 2d 723 (Ariz.,

1954) ; *Garrett v. Reno Oil Company,* 271 S. W. 2d 764 (Texas, 1954). See also *Don v. Benjamin M. Knapp, Inc.,* 119 N. Y. S. 2d 801 (affirmed without opinion, 117 N. E. 2d 128), following *Passalacqua v. Draper,* 107 N. Y. S. 2d 812, and earlier cases.

Perhaps the clearest statement of the reasons for the rule are to be found in the recent and unanimous decision of the House of Lords, *Best v. Samuel Fox & Co. Ld.,* [1952] A. C. 716, affirming [1951] 2 K. B. 639. Lord Porter observed that "The common law is a historical development rather than a logical whole, and the fact that a particular doctrine does not logically accord with another or others is no ground for its rejection." He had no difficulty in distinguishing the "enticement" cases, on the ground that they were intentional wrongs directed specifically against the marital relation, and with full knowledge of it. He said: "Even if it be conceded that the rights of husband and wife ought to be equalized I agree with the Lord Chief Justice that today a husband's right of action for loss of his wife's consortium is an anomaly and see no good reason for extending it." Lord Goddard stressed the fact that no English court had ever allowed the recovery by a wife of damages for loss of consortium due to negligent injury to the husband. If the action were possible, recovery might have been had, even prior to the Married Women's Property Act, by simple joinder of the husband. He also observed that in principle, "Negligence, if it is to give rise to legal liability, must result from a breach of duty owed to a person who thereby suffers damage. But what duty was owed here by the employers of the husband to the wife? If she has an action in this case so must the wife of any man run over in the street by a careless driver. The duty there which gives rise to the husband's cause of action arises out of what may for convenience be called proximity; the driver owes a duty not to injure other persons who are using the road on which he is driving. He owes no duty to persons not present except to those whose property may be on or adjoining the road

which it is his duty to avoid injuring." He said that the husband's right to recover for loss of consortium was "truly a remnant, and perhaps the last, of his right to sue for the loss of servitium; for, * * * it is to the protection of such material interests that the law attends rather than mental pain or anxiety." Consortium was viewed as an inseparable bundle of rights, stemming from a concept of proprietary interest. A wife was never regarded as having any equivalent proprietary right in her husband, so there was nothing to which the vestigial right could attach.

The reasoning of the English court that the duty owed by a negligent defendant does not extend to remote consequences, affecting third persons, finds support in the Maryland cases. See *Resavage v. Davies,* 199 Md. 479, *State v. Baltimore Transit Co.,* 197 Md. 528, and *Bowman v. Williams,* 164 Md. 397. Those cases involved nervous shock to persons near the scene of the accident; it was conceded that apart from statute liability would not extend to persons not present, even though closely related or directly affected. In any event, it seems perfectly clear that *Emerson v. Taylor, supra,* if not correctly decided on principle, is supported by the overwhelming weight of authority, ancient and modern. If the case were one of first impression, and the authorities were divided, arguments based on abstract theory and logical symmetry might have more weight. Cf. *Damasiewicz v. Gorsuch,* 197 Md. 417. To discover a novel cause of action at this late date would usurp the legislative prerogative. Cf. *State v. Hatfield,* 197 Md. 249, 256.

We decline to overrule the *Emerson* case. Whatever faults may be found with the reasoning of that opinion, every point here made was before the court and the unanimous decision of our predecessors is not to be lightly overturned. Since the decision of that case in 1918, the Legislature has had repeated opportunities to change the rule announced, and in numberless litigated cases, and settlements in an active field of litigation, the

50

authority of that decision has been recognized, as indeed it has been in the District of Columbia. *O'Neil v. United States,* 202 F. 2d 366, 367 (C. A. D. C., 1953). The doctrine of *stare decisis* is peculiarly applicable here. Reversal by judicial decision " 'declare(s)' the law as it has been from the beginning." *Fletcher v. Safe Deposit & Tr. Co.,* 193 Md. 400, 410; *Damasiewicz v. Gorsuch, supra* (p. 440). Legislative change can be made prospectively, and in many instances must be made so. A reversal of the *Emerson* case might have consequences far beyond the instant case, as, for example, in cases still open within the period of limitations. A rule that a wife could recover would open the door to similar claims by minor children, or to actions presumably barred by the Workmen's Compensation Act.

On the point of special damages, it may be noted that in *Emerson v. Taylor, supra,* the first count of the declaration claimed damages because, as a result of his injuries, she "rendered services in nursing her husband while he was incapacitated." (Record p. 4) In the court's opinion (p. 196) the language of 1 *Cooley, Torts* (3rd ed.) p. 474, was quoted with approval: "A wife cannot recover damages on account of personal injury to her husband whereby she sustains loss of support and of consortium and is compelled to care for him while sick." In a footnote to 1 *Poe, Pleading & Practice* (*Tiffany's ed.* ), sec. 436B, *Emerson v. Taylor, supra,* is cited for the proposition that: "The wife cannot recover for any loss to her caused by personal injuries to the husband."

We think the farm work performed by her falls into the same category as the nursing care. It was recognized in the *Hitaffer* case that the concept of consortium includes material services as well as a "sentimental" element. As to the former, it was admitted that there would be a danger of double recovery. At common law the husband was entitled to the services of his wife, and was obliged to support her. The wife was not entitled to the services of her husband, nor was she obliged to

support him. The Married Women's Property Act. Code (1951), Art. 45, sec. 5, did not purport to alter these rules. Cf. *Riegger v. Brewing Company,* 178 Md. 518, 521. Whether the husband could recover for the value of extraordinary services rendered by the wife as a result of his incapacity, or whether he would be limited to actual expenses, are questions not before us. We hold that she may not recover for services performed by her because of his disability, under the declaration in the instant case. It is alleged that the farm was jointly owned by them, and therefore any services performed by her in connection with the farm were for her own benefit as well as his. To the extent that she was deprived of his assistance, the claim would seem to fall squarely within the definition of consortium. We think the demurrer was properly sustained.

*Judgments affirmed, with costs.*